1    SEAN P. REIS - SBN 184044
     (sreis@edelson.com)
2    EDELSON MCGUIRE, LLP
     30021 Tomas Street, Suite 300
3    Rancho Santa Margarita, California 92688
     Telephone: (949) 459-2124
4    Facsimile: (949) 459-2123

5    JAY EDELSON
     (jedelson@edelson.com)*
6    RAFEY S. BALABANIAN
     (rbalabanian@edelson.com)*
7    BENJAMIN H. RICHMAN
     (brichman@edelson.com)*
8    CHANDLER R. GIVENS
     (cgivens@edelson.com)*
9    EDELSON MCGUIRE, LLC
     350 North LaSalle Street, Suite 1300
10   Chicago, Illinois 60654
     Telephone: (312) 589-6370
11   Facsimile: (312) 589-6378

12   *Pro hac vice admission to be sought

13   Attorneys for Plaintiff and the Putative Classes

14            **UNITED STATES DISTRICT COURT**

15          **NORTHERN DISTRICT OF CALIFORNIA**

16             **SAN FRANCISCO DIVISION**

17   PHYLLIS BASTION, individually and on behalf    Case No.
     of all others similarly situated,
18

19              Plaintiff,

20        v.

21   SPEEDYPC SOFTWARE, a British Columbia
     company,
22

23             Defendant.

| | |
|---|---|
| Case No. | |
| **COMPLAINT FOR:** | |
| 1. **Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;** | |
| 2. **Fraudulent Inducement;** | |
| 3. **Breach of Express Warranties, Cal. Com. Code § 2313;** | |
| 4. **Breach of Contract; and** | |
| 5. **Breach of the Implied Covenant of Good Faith and Fair Dealing.** | |
| **DEMAND FOR JURY TRIAL** | |
| **CLASS ACTION** | |

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff Phyllis Bastion ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant SpeedyPC Software ("SpeedyPC" or "Defendant") for its practice of defrauding consumers through the deceptive design and sale of its SpeedyPC Pro software. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.   SpeedyPC develops software that it claims will increase the speed, performance, and stability of a consumer's personal computer ("PC"), protect against privacy risks, and remove harmful system errors. Unfortunately for consumers, SpeedyPC's methods of inducing consumers to purchase the software, as well as the product itself, are undeniably fraudulent.

2.   Through a common deceptive scheme, SpeedyPC uniformly defrauds consumers into purchasing the software product at issue in this lawsuit—SpeedyPC Pro.

3.   First, SpeedyPC represents to consumers via its websites that SpeedyPC Pro is capable of identifying, reporting, and repairing a wide range of computer errors and privacy and security threats. SpeedyPC further asserts that SpeedyPC Pro will increase system startup speeds and optimize a computer's performance.

4.   Next, to convince the consumer of SpeedyPC Pro's purported value, SpeedyPC invites the user to download a free trial version to conduct a diagnostic scan, which supposedly detects whether any problems exist on the consumer's PC. Immediately after completing the scan, SpeedyPC reports, in alarmist fashion, that the consumer's computer is afflicted by a variety of system problems, harmful errors, and privacy and security threats. Finally, SpeedyPC informs the consumer that to fully remove these "errors," the consumer must purchase the full version of SpeedyPC Pro.

5.   As explained more fully herein, however, SpeedyPC Pro *does not perform any credible diagnostic testing* on the consumer's computer. Instead, SpeedyPC intentionally designed

1   SpeedyPC Pro to invariably and ominously report that the consumer's PC needs repair and is at risk

2   of harmful errors, privacy risks, and other computer problems, regardless of the real condition of

3   the consumer's computer.

4         6.    The misrepresentations above—both through SpeedyPC's marketing and in-software

5   graphical and textual assertions—are used to fraudulently induce consumers into purchasing

6   SpeedyPC Pro.

7   **PARTIES**

8         7.    Plaintiff Phyllis Bastion is a natural person and citizen of the State of California.

9         8.    Defendant SpeedyPC Software is a company organized and existing under the laws

10  of British Columbia, Canada, with its headquarters and principal place of business located at 1892

11  West Broadway, 2nd Floor, Vancouver, British Columbia V6J 1Y9 Canada. Defendant does

12  business throughout the State of California and the United States.

13  **JURISDICTION AND VENUE**

14        9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

15  because (i) at least one Class member is a citizen of a different state than SpeedyPC, (ii) the amount

16  in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) none of the

17  exceptions under that subsection apply to this action.

18       10.    This Court has personal jurisdiction over SpeedyPC because it conducts business in

19  California and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or

20  emanated from California.

21       11.    Venue is proper in this District under 28 U.S.C. § 1391(a) because the injuries of

22  which Plaintiff complains were directed to, and/or emanated from this District. Venue is

23  additionally proper because SpeedyPC transacts significant business in this District including

24  soliciting consumer business and entering into consumer and business contracts.

25  **INTRADISTRICT ASSIGNMENT**

26       12.    Pursuant to Civil Local Rule 3-2(d), this case shall be assigned to the San Francisco

27

28

CLASS ACTION COMPLAINT

1    Division.

2                          **FACTUAL BACKGROUND**

3    **I.       A brief overview of SpeedyPC Software.**

4           13.     SpeedyPC is a "utility" software company that develops computer security and

5    optimization software products.

6           14.     SpeedyPC asserts that its software products are consumers' "PC cleaning, repair, and

7    optimization toolbox[es]"—capable of fixing a wide variety of computer problems. One of those

8    products is SpeedyPC Pro.

9    **II.      SpeedyPC uses scare tactics to trick consumers into purchasing SpeedyPC Pro.**

10          15.     A consumer searching the World Wide Web for software to increase the speed or

11   performance of their computer, to remove harmful computer errors, or to protect their privacy and

12   security, will likely encounter SpeedyPC's advertisements for SpeedyPC Pro, which entice users

13   into trying the software with representations like the following,

14               •   "Boost your PC's speed and performance: SpeedyPC Pro cleans, optimizes and

15                   protects your computer for improved speed, performance and operation.";

16               •   Find your PC's performance potential: SpeedyPC Pro cleans your computer with

17                   just a couple of clicks. It also utilizes premium optimization tools so you get the

18                   most out of your PC!"; and

19               •   "SpeedyPC Pro improves your PC's health."

20          16.     When a consumer clicks on an advertisement or hyperlink to one of SpeedyPC's

21   websites, SpeedyPC presents the user with facts designed to frighten the consumer about the status

22   of their computer system. For instance, SpeedyPC warns that:

23               •   "Malicious programs can cause all kinds of problems for you and your computer.

24                   Some kinds of malware try to grab your confidential data, such as banking

25                   information or passwords…SpeedyPC Pro's scan is designed to find these

26                   malware types…**SpeedyPC Pro finds and removes malware to make your PC**

27

28

CLASS ACTION COMPLAINT

**safe and stable.**";

- "The Windows registry is a huge factor in your computer's operation. **If the registry is not healthy, your computer needs help!**...**SpeedyPC Pro probes the Windows registry to clean:** ActiveX, Shared dlls, Uninstall entries, File path references, Shell extensions, Application paths, Startup entries, and much more"; and

- "Protect your privacy: If someone has access to your computer, they could learn a lot about you. Information stored on your PC through your normal Internet and file use could be used for identity theft, targeted phishing scams and other fraud attempts. SpeedyPC Pro cleans away all traces of your private and confidential information."

17.     Regardless of where the consumer encounters these statements, SpeedyPC recommends that the consumer download SpeedyPC Pro to protect, repair and optimize their computer, thus triggering the initial phase of SpeedyPC's deceptive scheme—misrepresenting the utility of the SpeedyPC Pro software.

**A.     SpeedyPC misrepresents the utility of SpeedyPC Pro.**

18.     On its website, SpeedyPC claims that its software will scan a consumer's computer to detect a variety of harmful computer errors, and "process performance problems, dangerous malware, privacy files and junk files." SpeedyPC then claims that its software will "take care" of or eliminate these common computer problems. Specifically, SpeedyPC represents through its website that SpeedyPC was designed to, among other things:

- "protect [you] and your PC by removing malware and privacy files";

- "improve[] PC startup times";

- "optimize[] memory"; and

- eliminate "clutter, error messages, freezing, crashes or erratic performance".

19.     Now informed that SpeedyPC Pro is capable of performing these tasks, SpeedyPC

1    moves to the second phase of its deceptive plot—convincing users that their computers are afflicted

2    with the problems above to induce them into purchasing its software.

3        **B.    SpeedyPC falsely informs consumers that their computers need repair.**

4        20.    Through its website, SpeedyPC recommends that the consumer download SpeedyPC

5    Pro and conduct a free scan to detect issues that the product is supposedly designed to identify and

6    fix. Naturally, the average consumer believes that the scan will detect the sort of computer issues

7    that SpeedyPC claims SpeedyPC Pro can remedy, and that it will "eliminate [such] problems."

8        21.    Immediately after installing the program on their PC, the third phase of the deceptive

9    scheme begins: the software informs the user that dozens of harmful errors exist on the computer,

10   and then offers to fix such "errors"—for a price.

11       **C.    Plaintiff's expert uncovers that SpeedyPC designed its software to invariably
              report benign errors as harmful.**

12       22.    After the consumer downloads and installs SpeedyPC Pro, the software immediately

13   begins conducting the "free diagnostic scan."

14       23.    Once the scan is complete, SpeedyPC Pro displays a list of purported errors

15   identified by the software. These errors are broken down by category and accompanied by a gauge

16   ranging from "Good" to "Critical" that describes the "damage level" supposedly caused by the

17   purported error.

18       24.    SpeedyPC Pro also presents a graphical meter depicting the system's overall

19   "Performance" and "Security" that ranges from red (minimum or bad) to green (maximum or good).

20       25.    The truth, however, is that SpeedyPC Pro's alarmist scan results are simply scare

21   tactics used by SpeedyPC to frighten consumers into purchasing its software.

22       26.    Through her attorneys, Plaintiff has engaged a computer forensics expert to examine

23   the trial and full versions of SpeedyPC Pro. The results of this investigation confirm that both

24   versions of SpeedyPC Pro are designed to *always* report that a user's computer is severely

25   damaged. Ostensibly, these representations scare the user into believing that the computer is

26   damaged, or at risk, and that the purchase and continued use of SpeedyPC is necessary to "fix"

27

28

CLASS ACTION COMPLAINT

these problems. Worse, Plaintiff's experts revealed that the errors detected as "Critical" *are not credible threats* to a computer's functionality.

27.    The expert's investigation further uncovered that SpeedyPC programmed the trial and full versions of SpeedyPC Pro to (i) always identify problems on a user's computer (even where none exist), (ii) artificially inflate the number of errors and security risks detected on a user's computer, (iii) display individual errors multiple times—to exaggerate the number of errors detected, (iv) characterize innocuous items as errors, (v) arbitrarily report that the user's "Security" and "Performance" are low without any credible assessment of these issues, and (vi) arbitrarily characterize certain errors as "Critical."

28.    Through the deceptive scheme described above, SpeedyPC has profited, and continues to profit, by defrauding consumers into believing that their computers are severely damaged and/or at risk, and that the purchase—for $39.97—and continued use of SpeedyPC Pro is necessary to "fix" these problems.

**III.    SpeedyPC continues its deceptive practices, in disregard of the changing utility software industry.**

29.    Unfortunately for consumers, SpeedyPC is not the only company to employ the fraudulent programmatic design and marketing practices at issue in this lawsuit; the utility software industry has been fraught with these tactics for over a decade. It is only recently, however, that software developers—like SpeedyPC and its competitors—have faced legal action for their misconduct.

30.    Indeed, numerous lawsuits have been filed against well-known competitors of SpeedyPC (e.g., Symantec Corp. and AVG Technologies)—including several by Plaintiff's counsel here—which allege similar claims related to the fraudulent design and marketing of so-called utility software products. Several of those cases have resulted in classwide settlements and industry-shaping software modifications, which compel the implementation of far more transparent error detection and reporting procedures.

31.    Rather than follow suit and make the changes necessary to ensure that its software

CLASS ACTION COMPLAINT

1  truthfully detects, reports and repairs harmful errors and other problems present on users' PCs,

2  SpeedyPC continues to profit from its unlawful tactics.

3  **IV.  Plaintiff Bastion's Experience**

4       32.    In or around January 2012, Plaintiff Bastion was browsing the World Wide Web and

5  encountered an advertisement for SpeedyPC Pro. The advertisement warned that dangerous

6  computer errors may be harming her computer's performance, and that running a free SpeedyPC

7  Pro diagnostic scan would detect and remedy such problems.

8       33.    Bastion clicked on the advertisement and was directed to SpeedyPC's website.

9  While on the website, Bastion viewed SpeedyPC's representations about its software's utility.

10       34.    Relying upon the representations made by SpeedyPC—namely, that SpeedyPC Pro

11  would "clean[], optimize[] and protect [her] computer for improved speed, performance and

12  operation" as well as protect it from viruses, malware and privacy threats, and otherwise perform

13  the tasks such as those described in Paragraph 18—Bastion downloaded the software.

14       35.    After Bastion installed SpeedyPC Pro, the software conducted a "scan" of her

15  computer and informed her that thousands of serious and critical errors were present on her PC.

16  SpeedyPC Pro also displayed a gauge representing system performance and system security, with

17  both gauges containing a needle pointing "in the red." Additionally, SpeedyPC warned her through

18  text that these problems were decreasing her computer's performance and compromising her

19  security, thus required her attention, and urged her to purchase the software in order to "fix" these

20  problems.

21       36.    After clicking a button labeled "Fix All," Bastion was forwarded to a SpeedyPC

22  webpage to "register" SpeedyPC Pro to fix the thousands of purported problems identified by the

23  software. After reaching SpeedyPC's registration webpage, SpeedyPC again represented to Bastion

24  that "SpeedyPC Pro detected some problems that need to be fixed" and instructed her to "Register

25  SpeedyPC Pro now!"

26       37.    However, as discussed above, SpeedyPC Pro did not actually detect thousands of

"Critical" errors, nor did it accurately identify and report the *actual* condition of Bastion's computer. Rather, SpeedyPC designed SpeedyPC Pro to always return these results. As such, Bastion was misled into believing that her computer was at-risk, and that she needed to pay to register SpeedyPC Pro to repair her computer.

38.     Reasonably believing that SpeedyPC Pro's analysis was correct and that her computer urgently needed repair, Bastion paid approximately $40.00 to activate her copy of SpeedyPC Pro, allowing her to repair the purported errors.

39.     But for SpeedyPC's misrepresentations—that her computer had critical system problems, poor performance and security statuses, and that thousands of other problems that urgently needed repair—Bastion would not have purchased SpeedyPC's software. Similarly, but for SpeedyPC's "free scan," Bastion would not have paid to register the full version of the SpeedyPC Pro software.

40.     The full version of SpeedyPC Pro that Bastion purchased could not and did not perform as advertised by SpeedyPC. Instead, SpeedyPC designed it to invariably return false error reports, to misrepresent the actual health and security status of Plaintiff's computer, and to be incapable of repairing the reported errors and problems.

## CLASS ALLEGATIONS

41.     **Class Definition:** Plaintiff Bastion brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of herself and the Classes of similarly situated individuals, defined as follows:

> **Class:** All individuals and entities in the United States and its territories that have purchased SpeedyPC Pro from SpeedyPC Software.

> **California SubClass:** All individuals and entities in the State of California that have purchased SpeedyPC Pro from SpeedyPC Software.

Excluded from the Class and California SubClass (collectively, the "Classes) are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current and former employees, officers,

and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

42.   **Numerosity**: The exact number of members of the Classes is unknown to Plaintiff at this time, but on information and belief, SpeedyPC has sold its software to thousands of members throughout the country and the State of California, making joinder of each individual member impracticable. Ultimately, members of the Classes will be easily identified through SpeedyPC's records.

43.   **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of SpeedyPC's uniform wrongful conduct during transactions with Plaintiff and the Classes. Plaintiff's claims are typical of the claims of all of the other members of the Classes.

44.   **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and SpeedyPC has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

45.   **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members:

        a)   whether Defendant has intentionally designed its software to deceive consumers into purchasing its products;

        b)   whether Defendant has breached its express warranties;

c)     whether Defendant's conduct described herein constitutes a breach of express warranties pursuant to the California Commercial Code;

d)     whether Defendant's conduct described herein constitutes a violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

e)     whether Defendant's conduct described herein constitutes fraudulent inducement;

f)     whether Defendant's conduct described herein constitutes a breach of contract; and

g)     whether Defendant's conduct described herein constitutes a breach of implied covenant of good faith and fair dealing.

46.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by SpeedyPC's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from SpeedyPC's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

47.    **Policies Generally Applicable to the Classes:** This class action is also appropriate for certification because SpeedyPC has acted or refused to act on grounds generally applicable to

the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole. SpeedyPC's policies challenged herein apply and affect members of the Classes uniformly and Plaintiff's challenge of these policies hinges on SpeedyPC's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. SpeedyPC has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Classes.

48.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definitions" based on facts learned in discovery.

**FIRST CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of Plaintiff and the California SubClass)**

49.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

51.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition.

52.     The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

53.     As described herein, SpeedyPC engaged in fraudulent, unfair, and unlawful business practices, as defined by the UCL, by, *inter alia*: (i) publicly misrepresenting SpeedyPC Pro's functionality; (ii) misrepresenting the results of SpeedyPC Pro's analysis to consumers, and (iii) using the misrepresentations to induce consumers into purchasing SpeedyPC Pro.

CLASS ACTION COMPLAINT

54.     Specifically, Defendant affirmatively represented to Plaintiff that: SpeedyPC Pro would honestly and accurately scan her computer for harmful problems, increase the speed and stability of her computer, protect her privacy, and perform tasks such as those described in Paragraph 18. Further, through SpeedyPC Pro itself, SpeedyPC affirmatively represented that Plaintiff's computer health, performance, and security were at "Critical" risk, and that thousands of harmful errors existed on her computer.

55.     SpeedyPC's affirmations were, in fact, false. SpeedyPC Pro does not (and cannot) actually perform all of the benefits Defendant promises through its marketing and websites. Likewise, SpeedyPC Pro's scan results were false, because SpeedyPC Pro did not perform any meaningful evaluation of Plaintiff's computer or any problems contained before representing to Plaintiff that her computer needed repair.

56.     Furthermore, the *only reason* for consumers to purchase SpeedyPC Pro is to ensure that any errors are fixed and to increase their computers' performance. As such, the scan's false results and its failure to provide all of the utility advertised were false marketing practices and were likely to mislead reasonable consumers.

57.     SpeedyPC has violated the UCL's "fraudulent" prong by knowingly making false representations of consumers'—including Plaintiff's and the Classes'—computer's need for repair, with the specific intent to defraud as many consumers as possible into purchasing and continuing to use its SpeedyPC Pro.

58.     Reasonable consumers are likely to be, and Plaintiff and the Classes were, deceived by SpeedyPC's misrepresentations about the full scope of benefits SpeedyPC Pro offers.

59.     Reasonable consumers are also likely to be, and Plaintiff and the Classes were, deceived by SpeedyPC's misrepresentations regarding the system health of their computers and their need for repair. In sum, reasonable consumers were likely to be, and Plaintiff and the Classes were, deceived into purchasing SpeedyPC Pro by SpeedyPC's misrepresentations.

60.     SpeedyPC also violated the UCL's "unfair" prong by causing substantial injury to

consumers through its fraudulent conduct described above. The injuries caused by SpeedyPC's unfair conduct are not outweighed by any countervailing benefits to consumers or competition. Given the information asymmetry between SpeedyPC and consumers regarding SpeedyPC Pro's functionality, Plaintiff and the Classes could not reasonably have known of the falsity of SpeedyPC's representations or avoided the harm those misrepresentations caused.

61.    Further, SpeedyPC violated the UCL's "unlawful" prong by breaching its express warranties to Plaintiff and the Classes, in violation of Cal. Com. Code § 2313, as detailed in Count III below. SpeedyPC's fraudulent marketing practices also violate California's public policies favoring enforcement of implied and express warranties.

62.    SpeedyPC's fraudulent, unfair, and unlawful conduct occurred during the marketing and sale of computer software products, and therefore occurred in the course of Defendant's business practices.

63.    SpeedyPC's fraudulent, unfair, and unlawful conduct directly and proximately caused Plaintiff and the Classes actual monetary damages in the form of the price paid for SpeedyPC Pro.

64.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring Defendant to cease the unfair and unlawful practices described herein, and (2) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**SECOND CAUSE OF ACTION**
**Fraudulent Inducement**
**(On Behalf of Plaintiff and the Classes)**

65.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

66.    As described with particularity in paragraphs 13 through 40 and throughout all Counts of this Complaint, SpeedyPC has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

67.    To induce Plaintiff to purchase SpeedyPC Pro, SpeedyPC affirmatively represented

CLASS ACTION COMPLAINT

1   to Plaintiff that SpeedyPC Pro possessed certain utility. Specifically, SpeedyPC represented that

2   SpeedyPC Pro would honestly and accurately scan her computer for harmful problems, increase her

3   computer's speed and stability, and protect her computer's security. Further, through SpeedyPC Pro

4   itself, SpeedyPC affirmatively represented that the health of Plaintiff's computer was "Critical" and

5   that thousands of errors existed on her computer.

6           68.    SpeedyPC's affirmative representations were in fact false. In particular, SpeedyPC

7   Pro does not increase a computer's performance and stability in the manner SpeedyPC described,

8   nor does it protect the user's security as represented. Likewise, SpeedyPC Pro's representations

9   upon installation were false, because it had not performed any meaningful evaluation of Plaintiff's

10   computer when it warned her of the need for computer repair.

11           69.    The utility of a consumer product is a material term of any transaction because it

12   directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any

13   deception or fraud related to the utility of a product is materially misleading.

14           70.    As SpeedyPC Pro's creator, SpeedyPC knew that its representations about SpeedyPC

15   Pro's utility were false. SpeedyPC intentionally designed its public representations to mislead

16   consumers about SpeedyPC Pro's utility, and programmed SpeedyPC Pro to falsely report computer

17   errors and to deceive users about their computers' system health.

18           71.    SpeedyPC made its misrepresentations specifically to induce Plaintiff and as many

19   other consumers as possible to rely on the misrepresentations and purchase SpeedyPC Pro.

20           72.    As a consumer lacking the requisite technical expertise to independently gauge

21   SpeedyPC Pro's underlying functionality, and taking SpeedyPC's statements at face value, Plaintiff

22   justifiably relied upon SpeedyPC's misrepresentations and would not have purchased SpeedyPC

23   Pro but for the misrepresentations that her computer needed SpeedyPC Pro to perform the

24   beneficial tasks advertised.

25           73.    By using false and fraudulent marketing tactics, and exaggerated and fraudulent in-

26   software representations, SpeedyPC has engaged in fraudulent practices designed to mislead and

27

28

deceive consumers into purchasing SpeedyPC Pro.

74.    As a result of relying on SpeedyPC's misrepresentations, Plaintiff has been damaged in the amount of SpeedyPC Pro's purchase price.

75.    Plaintiff therefore prays for relief in the amount of the purchase price of SpeedyPC Pro. Plaintiff further alleges that SpeedyPC's conduct and misrepresentations were made with malice and in conscious disregard for Plaintiff's rights, thereby entitling her to punitive damages against SpeedyPC in an amount sufficient to deter such conduct in the future.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranties**
**Pursuant to Cal. Com. Code § 2313**
**(On Behalf of Plaintiff and the Classes)**

76.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

77.    Pursuant to California Commercial Code § 2313, SpeedyPC's sale of SpeedyPC Pro included express warranties created by SpeedyPC's affirmation of facts and promises through its advertising, websites, and in-software representations.

78.    SpeedyPC's express warranties included affirmations of fact and promises that SpeedyPC Pro would truthfully identify and repair critical computer errors, increase computer speed, performance and stability, protect against privacy risks, and remove harmful errors. In actuality, SpeedyPC fraudulently designed its software to falsely identify and/or exaggerate the presence of harmful errors, and misrepresent the overall status of the computer to deceive consumers into thinking the software provided some utility.

79.    Plaintiff and the Classes relied upon SpeedyPC's affirmations and promises when purchasing SpeedyPC Pro, and the affirmations formed the basis for the bargain, in that Plaintiff and members of the Classes believed they were purchasing software that would honestly and accurately repair their computers. But for SpeedyPC's affirmations and promises, Plaintiff and the Classes would not have purchased SpeedyPC Pro.

80.    SpeedyPC breached its express warranties because SpeedyPC Pro did not perform

CLASS ACTION COMPLAINT

any credible diagnostic test on Plaintiff's or the Classes' computer systems. Rather, it artificially and arbitrarily reported harmful computer errors and critical system health, and failed to increase the performance or safety of her PC.

81.     SpeedyPC's breach injured Plaintiff and the Classes because they purchased a product of diminished value—software that does not actually perform the beneficial tasks represented to them through SpeedyPC's affirmations and promises.

82.     By serving this Complaint, Plaintiff and the Classes hereby give Defendant notice that it has breached its express warranties and request maximum damages as provided by the California Commercial Code.

## FOURTH CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Classes)

83.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

84.     Plaintiff and members of the Classes entered into agreements with SpeedyPC whereby SpeedyPC agreed to sell, and Plaintiff and members of the Classes agreed to purchase, the full version of the SpeedyPC software that would detect and remove legitimate computer errors from Plaintiff's and the Classes' computers.

85.     SpeedyPC voluntarily assumed a contractual obligation to honestly diagnose problems on Plaintiff's and the Classes' computers and to honestly indicate whether problems exist. This obligation is a material term of the agreement. SpeedyPC did not honor this obligation.

86.     SpeedyPC also assumed an obligation to provide Plaintiff and the Classes a product that would remove errors from their computers. SpeedyPC did not honor this obligation.

87.     Plaintiff and the Classes paid to SpeedyPC, and SpeedyPC accepted, the purchase price of SpeedyPC Pro, and therefore performed their obligations under the contract.

88.     SpeedyPC breached the contract with Plaintiff and the Classes by failing to honestly and accurately inform consumers about the true condition of their computers, and further by

CLASS ACTION COMPLAINT

providing software that failed to offer the benefits promised, namely, improvements in their computers' performance, privacy, and security.

89. The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Classes economic injury and other damages, because they purchased a product that does not perform as SpeedyPC promised, and therefore lacks the utility contracted for.

### FIFTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Classes)

90. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

91. In order to benefit from SpeedyPC's supposed threat-removal software, Plaintiff and the Classes affirmatively allowed SpeedyPC to install SpeedyPC Pro on their computers.

92. SpeedyPC's agreement to install software to diagnose and remove threats from Plaintiff's and the Classes' computers in exchange for fees is a valid and enforceable contract between Plaintiff and the Classes on the one hand, and SpeedyPC on the other.

93. SpeedyPC acted in bad faith and breached the provisions of that agreement, specifically by not honoring its responsibilities to perform truthful diagnostic and remedial operations, as described herein, and instead, providing software that it intentionally designed to produce false errors reports, misrepresent the actual "Security" and "Performance" statuses of users' computer, and which was incapable of repairing the purported errors

94. California contract law recognizes the implied covenant of good faith and fair dealing in every contract.

95. Implicit in the contract were provisions prohibiting SpeedyPC from engaging in conduct that frustrated or injured Plaintiff's and the Classes' rights to receive the benefits of the agreement.

96. Plaintiff and the Classes sought to receive the bargained-for benefit of obtaining a software product that performed truthful diagnostic and remedial operations, as advertised by SpeedyPC.

CLASS ACTION COMPLAINT

97.     Rather than provide the bargained-for benefit to Plaintiff and the Classes, SpeedyPC produced software that falsely represented the condition of scanned computers and failed to perform its advertised functions. SpeedyPC's conduct frustrated Plaintiff's and the Classes's rights to receive the benefits of the contract by creating the illusion that the benefits were supplied (when in fact, they were not), and leading Plaintiff and the Classes to believe that their contracts had been fulfilled.

98.     SpeedyPC further breached the implied covenant of good faith and fair dealing by failing to honestly and accurately inform consumers about the true condition of their computers, and further by failing to fully comply with the proscriptions of applicable statutory law

99.     SpeedyPC's misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in injury to Plaintiff and the Classes in the form of price paid in excess of SpeedyPC Pro's actual utility and/or money conferred on SpeedyPC by Plaintiff and the Classes, in exchange for fully functional software, that was knowingly and wrongfully retained by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bastion, on behalf of herself and the Classes, respectfully requests that this Court issue an order:

A.     Certifying this case as a class action on behalf of the Classes defined above, appointing Phyllis Bastion as class representative, and appointing her counsel as class counsel;

B.     Declaring that Defendant's actions, as set out above, violate California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and constitute fraudulent inducement, breach of express warranties in violation of Cal. Com. Code § 2313, breach of contract, and breach of the implied covenant of good faith and fair dealing;

C.     Award damages, including statutory and punitive damages where applicable, to Plaintiff and the Classes in an amount to be determined at trial;

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests

CLASS ACTION COMPLAINT

1  of the Classes, including, *inter alia*: (i) an order prohibiting SpeedyPC from engaging in the

2  wrongful and unlawful acts described herein; (ii) requiring SpeedyPC to disclose and admit the

3  wrongful and unlawful acts described herein; and (iii) requiring SpeedyPC to fully disclose the true

4  nature of its software products now and in the future;

5         E.       Award Plaintiff and the Classes their reasonable litigation expenses and attorneys'

6  fees;

7         F.       Award Plaintiff and the Classes pre- and post-judgment interest, to the extent

8  allowable;

9         G.       Enter such other injunctive and/or declaratory relief as is necessary to protect the

10  interests of Plaintiff and the Classes; and

11         H.       Award such other and further relief as equity and justice may require.

12  **DEMAND FOR JURY TRIAL**

13         Plaintiff demands a trial by jury for all issues so triable.

14

15         Respectfully submitted,

16  Dated: September 11, 2012       **PHYLLIS BASTION**, individually and on behalf of
all others similarly situated,

17         By: /s/ Sean P. Reis

18         One of Plaintiff's Attorneys

19  SEAN P. REIS - SBN 184044

20  (sreis@edelson.com)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300

21  Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124

22  Facsimile: (949) 459-2123

23  JAY EDELSON
(jedelson@edelson.com)*

24  RAFEY S. BALABANIAN
(rbalabanian@edelson.com)*

25  BENJAMIN H. RICHMAN
(brichman@edelson.com)*

26  CHANDLER R. GIVENS
(cgivens@edelson.com)*

27

28

CLASS ACTION COMPLAINT

EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Pro hac vice* admission to be sought