1  SEAN P. REIS (SBN 184044)
   sreis@edelson.com
2  EDELSON MCGUIRE, LLP
   30021 Tomas Street, Suite 300
3  Rancho Santa Margarita, California 92688
   Tel: 949.459.2124
4  Fax: 949.459.2123

5  JAY EDELSON (Admitted *Pro Hac Vice*)
   jedelson@edelson.com
6  RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
7  BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
   brichman@edelson.com
8  CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
   cgivens@edelson.com
9  EDELSON MCGUIRE, LLC
   350 North LaSalle, Suite 1300
10 Chicago, Illinois 60654
   Tel: 312.589.6370
11 Fax: 312.589.6378

12 *Attorneys for Plaintiff and the Putative Classes*

13              **UNITED STATES DISTRICT COURT**

14           **NORTHERN DISTRICT OF CALIFORNIA**

15              **SAN FRANCISCO DIVISION**

16 ROSE-MAI ROBICHAUD, individually and on     Case No. 3:12-cv-04730-LB
   behalf of all others similarly situated,
17                                              **FIRST AMENDED CLASS ACTION
                     *Plaintiff*,              COMPLAINT FOR:**
18
                        *v.*                    1.  **Violations of California's Unfair
19                                                  Competition Law, Cal. Bus. & Prof.
   SPEEDYPC SOFTWARE, a British Columbia            Code §§ 17200,** *et seq.***;**
20 company,                                     2.  **Fraudulent Inducement;**
                                                3.  **Breach of Express Warranties, Cal.
21                   *Defendant*.                   Com. Code § 2313;**
                                                4.  **Breach of Contract; and**
22                                              5.  **Breach of the Implied Covenant of
                                                    Good Faith and Fair Dealing.**
23
                                                Judge: Honorable Laurel Beeler
24
                                                Action Filed: September 11, 2012
25

26

27

28

Plaintiff Rose-Mai Robichaud ("Plaintiff") brings this First Amended Class Action Complaint ("Complaint") against Defendant SpeedyPC Software ("SpeedyPC" or "Defendant") seeking relief for injuries it caused to her and a putative class of similarly situated individuals through its deceptive design, marketing and sale of its SpeedyPC Pro software. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      SpeedyPC develops software that it claims will increase the speed, performance, and stability of a consumer's personal computer ("PC"), remove harmful errors, and eliminate privacy and security threats. Unfortunately for consumers, SpeedyPC's methods of inducing consumers to purchase the software, as well as the product itself, are undeniably fraudulent.

2.      Through a common deceptive scheme, SpeedyPC uniformly defrauds consumers into purchasing the software at issue in this lawsuit—SpeedyPC Pro. A brief explanation of Defendant's scheme follows below.

3.      First, SpeedyPC represents to consumers on its websites that SpeedyPC Pro is capable of identifying, reporting, and repairing a wide range of computer errors and privacy and security threats. SpeedyPC further asserts that SpeedyPC Pro will increase system startup speeds and optimize a computer's performance.

4.      Next, to convince the consumer of SpeedyPC Pro's purported value, Defendant strongly encourages the user to download a free trial version of the software to conduct a diagnostic scan of their computer. This scan purportedly detects errors that lead to the problems identified in its marketing materials (as described above and further herein)—problems that SpeedyPC Pro is supposedly designed to fix. Immediately after completing the scan, SpeedyPC Pro reports, in alarmist fashion, that the consumer's computer is afflicted by hundreds of harmful errors, including viruses, and privacy and security threats. Finally, SpeedyPC informs the consumer that to fully

1   remove these "errors," the consumer must purchase the full version of SpeedyPC Pro.

2        5.     Despite the foregoing, and contrary to Speedy PC's marketing and in-software

3   representations, neither the free trial version nor the full registered version of SpeedyPC Pro

4   *performs any credible diagnostic testing* on the consumer's computer. Instead, SpeedyPC

5   intentionally designed SpeedyPC Pro to invariably and ominously report that the consumer's PC

6   needs repair and is at risk of harmful errors, privacy threats, and other computer problems,

7   regardless of the real condition of the computer.

8        6.     The misrepresentations described above—both through SpeedyPC's marketing and

9   in-software graphical and textual assertions—are used to fraudulently induce and trick consumers

10   into purchasing and continuing to use the SpeedyPC Pro software.

11        7.     SpeedyPC holds itself out as a reputable developer of software designed to protect

12   consumers' computers. Because average consumers lack the requisite technical expertise to

13   understand the underlying functionality of SpeedyPC's software, they trust SpeedyPC to convey

14   truthful information, and to honestly and accurately identify and remove harmful errors from their

15   computers. SpeedyPC betrayed that trust, and as a result, thousands of consumers have been, and

16   continue to be, duped into buying software they do not need. In light of SpeedyPC's willful

17   conduct, Plaintiff seeks punitive damages.

18                                        **PARTIES**

19        8.     Plaintiff Rose-Mai Robichaud is a natural person and citizen of the State of

20   California.

21        9.     Defendant SpeedyPC Software is a company organized and existing under the laws

22   of British Columbia, Canada, with its headquarters and principal place of business located at 1892

23   West Broadway, 2nd Floor, Vancouver, British Columbia V6J 1Y9 Canada. Defendant does

24   business throughout the State of California and the United States.

25                       **JURISDICTION AND VENUE**

26        10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

27

28

1  because (i) at least one member of the Classes is a citizen of a different state than SpeedyPC, (ii) the

2  amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the

3  exceptions under that subsection apply to this action.

4       11.    This Court has personal jurisdiction over SpeedyPC because it conducts business in

5  California and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or

6  emanated from California.

7       12.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the injuries of

8  which Plaintiff complains were directed to, and/or emanated from this District. Venue is

9  additionally proper because SpeedyPC transacts significant business in this District, including

10  soliciting consumer business and entering into consumer and business contracts.

11  **FACTUAL BACKGROUND**

12  **I.    A Brief Overview of SpeedyPC Software.**

13       13.    SpeedyPC is a "utility" software company that develops computer security and

14  optimization software products.

15       14.    On its website, SpeedyPC asserts that its software products are consumers' "PC

16  cleaning, repair, and optimization toolbox[es]" and are capable of fixing a wide variety of computer

17  problems. One of those products is SpeedyPC Pro.

18  **II.    SpeedyPC Uses Scare Tactics to Trick Consumers into Purchasing SpeedyPC Pro.**

19       15.    SpeedyPC heavily promotes SpeedyPC Pro through online advertisements and on its

20  websites as software that is capable of increasing computer speed and performance, removing

21  harmful computer errors, and protecting users' privacy and security.

22       16.    For example, if a given consumer searches the World Wide Web for software to

23  enhance their computers' performance, they will likely encounter SpeedyPC's advertisements for

24  SpeedyPC Pro, including the following:

25          • "Boost your PC's speed and performance: SpeedyPC Pro cleans, optimizes and

26             protects your computer for improved speed, performance and operation."

27

28

- "Find your PC's performance potential: SpeedyPC Pro cleans your computer with just a couple of clicks. It also utilizes premium optimization tools so you get the most out of your PC!"
- "SpeedyPC Pro improves your PC's health."

17. When a consumer clicks on an advertisement or hyperlink to one of SpeedyPC's websites, Defendant presents the user with representations designed to frighten the consumer into believing that their computer is at serious risk. For instance, SpeedyPC warns that:

- "Your computer has a lot going on. If it has too much happening, your speed and performance can take a drastic swan dive."
- "If someone has access to your computer, they could learn a lot about you. Information stored on your PC through your normal Internet and file use could be used for identity theft, targeting phishing scams and other fraud attempts."
- "Your computer is like a squirrel, storing its information wherever it can. Over time this means parts of your files are spread throughout your hard drive. In order for the files to be used, your computer must track down all of the parts and reassemble them. This can take a lot of time."

18. SpeedyPC also presents consumers with a list of commonly occurring PC problems, and an explanation of how SpeedyPC Pro is designed to detect and fix the errors that cause these problems. For example, SpeedyPC's website reads in part:

- "Malicious programs can cause all kinds of problems for you and your computer. Some kinds of malware try to grab your confidential data, such as banking information or passwords…SpeedyPC Pro's scan is designed to find [and] remove[] malware to make your PC safe and stable."
- "The Windows registry is a huge factor in your computer's operation. If the registry is not healthy, your computer needs help!…SpeedyPC Pro probes the Windows registry to clean: ActiveX, Shared dlls, Uninstall entries, File path references, Shell extensions, Application paths, Startup entries, and much more."
- "Information stored on your PC through your normal Internet and file use could be used for identity theft, targeted phishing scams and other fraud attempts. SpeedyPC Pro cleans away all traces of your private and confidential information."

19. Regardless of where the consumer encounters these statements, SpeedyPC recommends that the consumer download SpeedyPC Pro to protect, repair and optimize their computers, thus triggering the initial phase of SpeedyPC's deceptive scheme—misrepresenting the

1   utility of the SpeedyPC Pro software.

2      **A.      SpeedyPC misrepresents the utility of SpeedyPC Pro.**

3      20.      On its website, SpeedyPC claims that its software will scan a consumer's computer

4   to detect a variety of harmful computer errors, and "process performance problems, dangerous

5   malware, privacy files and junk files." SpeedyPC then claims that its software will "take care" of or

6   eliminate these common computer problems.

7      21.      More specifically, SpeedyPC expressly warrants through its website that SpeedyPC

8   was designed to perform the following tasks:

9      • "protect [you] and your PC by removing malware and privacy files"

10     • "clean[] away all traces of your private and confidential information"

11     • "manage[] your computer's resources for improved performance"

12     • "improve[] PC startup times"

13     • "optimize[] memory"

14     • "eliminate clutter, error messages, freezing, crashes or erratic performance"

15     22.      But these representations do not accurately reflect SpeedyPC Pro's true capabilities.

16  The truth is that, at its core, SpeedyPC Pro performs two main functions: it's a registry cleaner[1] and

17  it removes superfluous "temporary" files from a user's hard drive. These operations do not come

18  close to squaring with SpeedyPC's representations about the functionality of SpeedyPC Pro. For

19  instance, neither of these functions will remove viruses, credibly protect a user's privacy, remove

20  serious security threats, nor prevent damaging PC errors.

21     23.      After consumers—most of whom are searching for software to fix seriously

22  malfunctioning computers—are informed that SpeedyPC Pro is capable of performing the tasks

23  identified above, SpeedyPC moves to the second phase of its deceptive scheme: convincing

24  consumers that their computers are afflicted by errors that lead to the problems that Defendant

---

25  [1]      "Registry cleaner" software is a type of utility program designed to remove unwanted or
26  redundant items from the Microsoft Windows operating system registry. The "registry" is a
    database of configuration settings that helps facilitate the operation of computer applications in the
27  operating system.

28

1   claims SpeedyPC Pro was designed to fix.

2       **B.    SpeedyPC falsely informs consumers that their computers need repair.**

3       24.    Through its website, SpeedyPC recommends that the consumer download the trial

4   version of SpeedyPC Pro in order to conduct a free scan to detect issues that the product is

5   supposedly designed to identify and fix. *See* Figures 1-4 (showing screenshots of advertisements

6   displayed on the Internet and on SpeedyPC's website for the free trial version of SpeedyPC Pro).



(Figure 1.)



(Figure 2.)



(Figure 3.)

(Figure 4.)

25.     The problem with SpeedyPC's approach is that, through these marketing materials, consumers are lead to believe that SpeedyPC Pro's free scan will detect the sort of computer errors causing the problems that SpeedyPC claims SpeedyPC Pro will fix (*i.e.*, harmful errors, viruses, and security and privacy threats). But, as explained above, that is simply not true.

26.     Immediately after installing the program on their PC, the third phase of the deceptive scheme begins: the software informs the user that hundreds of harmful errors exist on the computer, and then offers to fix such "errors"—but only after purchase of the full, registered version of SpeedyPC Pro.

**C.     SpeedyPC intentionally designed SpeedyPC Pro to invariably report benign errors as harmful to induce consumers to purchase its software.**

27.     After the consumer downloads and installs SpeedyPC Pro, the software immediately warns the user that he or she "need[s] to perform a scan." *See* Figure 5 (showing a screenshot of SpeedyPC Pro's initial diagnostic scan user interface).



(Figure 5.)

28.     Once the scan is complete, SpeedyPC Pro displays a warning to the user in an alarmist fashion that hundreds, or thousands, of serious problems exist on the computer and "require attention." The software also warns—using ominous white on red typeface and a graphical depiction of an alert sign—that the "Performance" and "Security" of the users' PC is in "Serious" or "Critical" condition. In addition to the graphical depictions of the computer's overall status, SpeedyPC Pro displays an itemized list of errors and problems purportedly identified by the software. These problems are broken down by category and accompanied by a gauge, which ranges from "Good" to "Critical," and represents the supposed "Damage Level[s]" caused by the problem.

29.     After presenting the supposed results of the diagnostic scan, SpeedyPC Pro displays to the user a half-page warning with bold red letters stating: "SpeedyPC Pro has determined that your computer requires immediate attention!" and is in "Serious" or "Critical" condition. *See* Figure 6 (showing a screenshot of SpeedyPC Pro's error reporting interface and registration and/or activation page). The user is then given the option to purchase the full version of the software to "fix" and repair the harmful errors detected.



(Figure 6.)

30.     The truth, however, is that SpeedyPC Pro's alarmist scan results are simply scare tactics—common to this industry—used by SpeedyPC to frighten consumers into purchasing its software.

31.     Through her attorneys, Plaintiff has engaged a computer forensics expert to examine SpeedyPC Pro. The results of this investigation confirm that the free trial and full registered versions of SpeedyPC Pro are designed to *always* report that a user's computer is severely damaged—regardless of the condition or type of computer the software is installed on. Ostensibly, these representations scare the user into believing that the computer is damaged, or at risk, and that the purchase and continued use of SpeedyPC Pro is necessary to "fix" these problems. Worse, Plaintiff's experts revealed that the errors detected as "Serious" or "Critical" *are not credible threats* to a computer's functionality.

32.     For example, Figure 7 below shows the results of a SpeedyPC Pro diagnostic scan conducted by the expert *on a brand new computer*.[2] *See* Figure 7 (showing a screenshot of

---

[2]     In fact, every Figure included in this Complaint shows the results of testing conducted on a brand new computer.

1  SpeedyPC Pro's error reporting interface).



(Figure 7.)

33.     Figure 7 shows SpeedyPC Pro reporting that the overall "Performance" of the computer, as illustrated by the gauge on the top right of the screen, is poor, that "125 problems require attention," and that at least some of those problems, are causing "Serious" or "Critical" damage to the computer system—even though this test computer has never been used.

34.     The expert's research also shows that SpeedyPC Pro was deliberately designed to mischaracterize the severity of errors to shock consumers into believing their computers are damaged. For example, in Figure 8 below, the expert planted a number of fake, innocuous errors (for example, the "FakeError01.log" file displayed in the red box shown in the Figure) that cannot cause damage to a computer. Tellingly, Figure 8 shows SpeedyPC Pro detecting this fake error and reporting that it is causing the computer "Serious" or "Critical" damage—a flagrant mischaracterization of this fake, non-damage causing error.



(Figure 8.)

35.     Not only does SpeedyPC Pro detect and mischaracterize non-damaging items as harmful, but the software also identifies naturally recurring system files as threatening. In other words, this means that SpeedyPC Pro will *always* report that certain files—files not actually detrimental to a PC's performance—are causing the computer harm, as these files will always exist by virtue of the normal operations of the computer system. *See* Figure 9 (showing automatically recurring Microsoft Windows log files being detected by SpeedyPC Pro as errors contributing to the computer's "Serious" or "Critical" damage level).

(Figure 9.)

36.     These examples are just the tip of the iceberg. In total, Plaintiff's expert uncovered that Defendant programmed both the free trial and full registered version of SpeedyPC Pro to (i) always identify problems on a user's computer (even where none exist), (ii) artificially inflate the number of errors and security risks detected on a user's computer, (iii) characterize innocuous items as errors, (iv) arbitrarily report that the user's "Security" and "Performance" are poor without any credible assessment of these issues, and (v) arbitrarily characterize individual errors as "Serious" or "Critical."

37.     Indeed, even after purchasing the full, registered version of the software, SpeedyPC Pro continues to falsely detect and report errors (as it was intentionally designed by Defendant to do). Presumably this is designed to defraud users into believing that the continued use of the software is necessary to repair so-called errors on their computers, and eventually, to induce them to upgrade or re-purchase the software after it expires.

38.     Through the deceptive scheme described above, Defendant has profited, and

continues to profit, by defrauding consumers into believing that their computers are severely damaged and/or at risk, and that the purchase—for $39.97—and continued use of the SpeedyPC Pro software is necessary to "fix" these problems. But, because the software does not actually provide the benefits advertised, SpeedyPC Pro does not deliver on its promises to its users.

**III.      SpeedyPC Continues its Deceptive Practices, in Disregard of the Changing Utility Software Industry.**

39.      Unfortunately for consumers, SpeedyPC is not alone in its use of the sorts of fraudulent programmatic design and marketing practices at issue in this case. Rather, the utility software industry has been fraught with these tactics for over a decade. It is only recently, however, that software developers—like SpeedyPC and its competitors—have been called to account for their profiting off of consumers who are unable to identify the fraudulent technological design and methodologies underlying this type of supposedly performance-enhancing software.

40.      Indeed, numerous lawsuits have been filed against well-known competitors of SpeedyPC (e.g., Symantec Corp. and AVG Technologies)—including several by Plaintiff's counsel here—which allege similar claims related to the fraudulent design and marketing of so-called utility software products. Several of those cases have resulted in classwide settlements and industry-shaping software modifications, which compel the implementation of far more transparent error detection and reporting procedures.

41.      Rather than follow suit and make the changes necessary to ensure that its software truthfully detects, reports and repairs harmful errors and other problems present on users' PCs, SpeedyPC has continued its unlawful business practices and profits from them to this day.

**IV.      Plaintiff Robichaud's Experience.**

42.      In or around September 2012, Robichaud's computer began malfunctioning. She noticed her computer speed began slowing, she received numerous error messages on her computer screen, and her computer would freeze often. As a result, Robichaud began performing Internet searches for software to fix the computer.

43.      After performing one Google search, Robichaud encountered one of SpeedyPC's

1   sponsored advertisements for SpeedyPC Pro—substantially similar to the advertisements described

2   in Section II.

3        44.    After viewing Defendant's advertisement for SpeedyPC Pro, Robichaud navigated to

4   one of Defendant's websites (www.SpeedyPC.com) and read Defendant's express warranties about

5   the software's utility, which were the same, or substantially similar to the representations shown in

6   Figures 10-16 below. *See* Figures 10-16 (showing screenshots of SpeedyPC's representations

7   regarding the SpeedyPC Pro software made on SpeedyPC's websites).

8

9   

10

11

(Figure 10.)

12

13

14

15

(Figure 11.)

16

17

18

19

20

21

22

23

(Figure 12.)

24

25

26

27

28

**Just what you need to help your PC**

Every good mechanic has a toolbox fully stocked with what he needs to get the job done. Consider SpeedyPC Pro your PC cleaning, repair and optimization toolbox. The program's main scan takes care of the common problems, such as registry errors, that make computers perform poorly. SpeedyPC Pro also has many advanced tools to improve startup times, find the right program to open file extensions, defragment your computer's memory and eject unwanted browser add-ons.

(Figure 13.)

**Get rid of malware**

Malicious programs can cause all kinds of problems for you and your computer. Some kinds of malware try to grab your confidential data, such as banking information or passwords, while others aim to turn your PC into a zombie member of its botnet. Spyware, Trojan downloaders, keyloggers, dialers, adware and rogueware are just some of the kinds of threats that try to download onto your computer. SpeedyPC Pro's scan is designed to find these malware types - and many others - running in Active Processes. **SpeedyPC Pro finds and removes malware to make your PC safe and stable.**

(Figure 14.)

**Protect your privacy**

If someone has access to your computer, they could learn a lot about you. Information stored on your PC through your normal Internet and file use could be used for identity theft, targeted phishing scams and other fraud attempts.

SpeedyPC Pro cleans away all traces of your private and confidential information. It wipes away passwords, credit card numbers and other personal and financial information.

(Figure 15.)

**Optimize memory**

Your computer is like a squirrel, storing its information wherever it can. Over time this means parts of your files are spread out throughout your hard drive. In order for the files to be used, your computer must track down all of the parts and reassemble them. This can take a lot of time. By defragmenting your computer's memory, all of parts of files are put in contiguous areas. **This means more room and faster recall.**

(Figure 16.)

45.     Relying upon these representations made by SpeedyPC—namely, that SpeedyPC Pro would "clean[], optimize[] and protect [her] computer for improved speed, performance and operation" as well as protect it from viruses, malware and privacy threats, and otherwise perform the tasks depicted in Figures 10-16—Robichaud downloaded the software.

46.     After Robichaud installed SpeedyPC Pro, the software conducted a "scan" of her computer. Robichaud recalls that the software informed her that over a thousand serious errors were detected, at least some of which SpeedyPC Pro informed her were causing her computer "Serious" or "Critical" damage. SpeedyPC Pro also displayed gauges representing her system's "Performance" and "Security" levels, with both gauges containing a needle pointing "in the red"

1   (indicating that such levels were in "Serious" or "Critical" condition). Additionally, SpeedyPC Pro

2   warned her that these problems were decreasing her computer's performance and compromising her

3   security—thus requiring her immediate attention—and urged her to purchase the software in order

4   to "fix" these problems. *See* Figure 6 above (showing a screenshot of SpeedyPC Pro's error

5   reporting interface and registration and/or activation page).

6         47.    After clicking a button in the software labeled "Fix All," Robichaud was forwarded

7   to a SpeedyPC webpage to "register" SpeedyPC Pro to fix the purported problems identified on her

8   computer by the software. After reaching SpeedyPC's registration webpage, SpeedyPC again

9   represented to Robichaud that "SpeedyPC Pro detected some problems that need to be fixed" and

10   instructed her to "Register SpeedyPC Pro now!" *See* Figure 10 above.

11         48.    Relying upon all of SpeedyPC's representations about the software's capabilities and

12   the condition of her computer (made both online and in the software itself) and thus, reasonably

13   believing that SpeedyPC Pro's analysis was correct and that her computer urgently needed repair,

14   Robichaud paid approximately $40.00 to activate her copy of SpeedyPC Pro (specifically, the

15   SpeedyPC Pro 2012 version), which SpeedyPC represented would supposedly repair the purported

16   errors.

17         49.    In reality, as discussed above, SpeedyPC Pro did not actually detect thousands of

18   "Serious" or "Critical" errors as SpeedyPC claimed that it would—because the software arbitrarily

19   detects and reports problems as "Serious" or "Critical", and cannot actually perform the beneficial

20   tasks described in its marketing materials and advertisements. Nor did the software accurately

21   identify and report the *actual* condition of Robichaud's computer. Rather, SpeedyPC Pro was

22   designed to always report the damning results discussed above. As such, Robichaud was misled into

23   believing that her computer was at serious risk, and that she needed to pay to register SpeedyPC Pro

24   in order to repair it.

25         50.    Similarly, the full version of the SpeedyPC Pro software that Robichaud purchased

26   could not and did not perform as advertised by SpeedyPC. Instead, SpeedyPC designed the full

27

28

version, like the trial version, to invariably return false errors as detailed in Section II.C above. In fact, every time Robichaud ran SpeedyPC Pro, the software reported that harmful errors were adversely affecting her computer and that she needed to "fix" the errors using SpeedyPC Pro. Yet, despite the fact that she repeatedly ran SpeedyPC Pro's scan, and purportedly "fixed" the reported errors, her computer continued to suffer from the same problems she experienced prior to purchasing and running the software.

## CLASS ALLEGATIONS

51.     **Class Definition**: Plaintiff Robichaud brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of herself and a class and subclass of similarly situated individuals, defined as follows:

> **Class**: All individuals and entities in the United States and its territories that have purchased SpeedyPC Pro.
>
> **California SubClass**: All individuals and entities in the State of California that have purchased SpeedyPC Pro.

Excluded from the Class and California SubClass (collectively, the "Classes") are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

52.     **Numerosity**: The exact number of members of the Classes is unknown to Plaintiff at this time, but on information and belief, SpeedyPC has sold its software to thousands of Class and California SubClass members throughout the country and the State of California, making joinder of each individual member impracticable. Ultimately, members of the Classes will be easily identified through SpeedyPC's records.

53.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of SpeedyPC's uniform wrongful conduct during transactions with Plaintiff and the Classes. Plaintiff's claims are typical of the claims of all of the other members of the Classes.

54.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and SpeedyPC has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

55.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members, including:

  a)     whether Defendant has intentionally designed SpeedyPC Pro to deceive consumers into purchasing it;

  b)     whether Defendant has breached its express warranties;

  c)     whether Defendant's conduct described herein constitutes a breach of express warranties pursuant to the California Commercial Code;

  d)     whether Defendant's conduct described herein constitutes a violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

  e)     whether Defendant's conduct described herein constitutes fraudulent inducement;

  f)     whether Defendant's conduct described herein constitutes a breach of contract; and

g)      whether Defendant's conduct described herein constitutes a breach of the

implied covenant of good faith and fair dealing.

56.     **Superiority**: This class action is appropriate for certification because class

proceedings are superior to all other available methods for the fair and efficient adjudication of this

controversy and joinder of all members of the Classes is impracticable. The damages suffered by

the individual members of the Classes will likely be small relative to the burden and expense of

individual prosecution of the complex litigation necessitated by SpeedyPC's wrongful conduct.

Thus, it would be virtually impossible for the individual members of the Classes to obtain effective

relief from SpeedyPC's misconduct. Even if members of the Classes could sustain such individual

litigation, it would not be preferable to a class action because individual litigation would increase

the delay and expense to all parties due to the complex legal and factual controversies presented in

this Complaint. By contrast, a class action presents far fewer management difficulties and provides

the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be

ensured.

57.     **Policies Generally Applicable to the Classes**: This class action is also appropriate

for certification because SpeedyPC has acted or refused to act on grounds generally applicable to

the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible

standards of conduct toward the members of the Classes, and making final injunctive relief

appropriate with respect to the Classes as a whole. SpeedyPC's policies challenged herein apply and

affect the members of the Classes uniformly and Plaintiff's challenge of these policies hinges on

SpeedyPC's conduct with respect to the Classes as a whole, not on facts or law applicable only to

Plaintiff.

58.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

Definitions" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On Behalf of Plaintiff and the California SubClass)**

59.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

60.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

61.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition.

62.     The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

63.     As described herein, SpeedyPC engaged in fraudulent, unfair, and unlawful business practices, as defined by the UCL, by, *inter alia*: (i) publicly misrepresenting SpeedyPC Pro's functionality, including through assertions such as those depicted in Figures 1-4 and 10-16; (ii) misrepresenting the results of SpeedyPC Pro's analysis to consumers found in the free trial and full registered versions of the software as described in Section II.C, (iii) using its misrepresentations to induce consumers into purchasing a full registered version of SpeedyPC Pro, and (iv) selling a full version of the software that lacked the advertised utility, similarly produced false error reports, and otherwise was incapable of functioning as Defendant represented it would.

64.     Specifically, Defendant affirmatively represented to Plaintiff and the California SubClass that: SpeedyPC Pro would honestly and accurately scan their computers for harmful errors and problems, increase the speed and stability of their computers, protect their privacy, and perform tasks such as those depicted in Figures 1-4 and 10-16. Further, through SpeedyPC Pro's in-software representations found in both the trial and full versions of the software, SpeedyPC affirmatively represented that the health, performance, and security of Plaintiff's and the California

SubClass's computers were poor and that numerous harmful errors were causing their computers "Serious" or "Critical" damage.

65.     SpeedyPC's representations were, in fact, false. SpeedyPC Pro does not (and cannot) actually perform all of the benefits Defendant promises through its marketing materials and in-software representations. Likewise, SpeedyPC Pro's scan results were false, because SpeedyPC Pro did not perform any meaningful evaluation of Plaintiff's and the California SubClass's computers or any errors or problems contained thereon before representing to Plaintiff and the California SubClass that their computers needed repair.

66.     Furthermore, the *only reason* for consumers to purchase SpeedyPC Pro is to ensure that any errors are fixed and to increase their computers' performance. As such, the free trial scan's false results and its failure to provide all of the utility advertised were deceptive marketing practices and were likely to mislead consumers acting reasonably under the circumstances. Likewise, the full version is likely to mislead consumers into believing that the software is functioning as advertised and that it is necessary to continue to use the software to maintain the health and security of their computers.

67.     SpeedyPC has violated the UCL's "fraudulent" prong by knowingly making false representations of consumers'—including Plaintiff and the California SubClass—computer's need for repair, with the specific intent to defraud as many consumers as possible into purchasing and continuing to use the SpeedyPC Pro software.

68.     Reasonable consumers are likely to be, and Plaintiff and the California SubClass were, deceived by SpeedyPC's misrepresentations about the full scope of benefits SpeedyPC Pro offers.

69.     Reasonable consumers are also likely to be, and Plaintiff and the California SubClass were, deceived by SpeedyPC's misrepresentations regarding the system health of their computers and their need for repair. In sum, reasonable consumers were likely to be, and Plaintiff and the California SubClass were, deceived into purchasing SpeedyPC Pro as a result of their reliance upon

1   SpeedyPC's misrepresentations.

2       70.   SpeedyPC also violated the UCL's "unfair" prong by causing substantial injury to

3   consumers through its fraudulent conduct described above. The injuries caused by SpeedyPC's

4   unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and

5   the injury is one that consumers themselves could not reasonably have avoided. Given the

6   information asymmetry between SpeedyPC and consumers regarding SpeedyPC Pro's functionality,

7   SpeedyPC knew or had reason to know that Plaintiff and the California SubClass could not

8   reasonably have known of or discovered the falsity of SpeedyPC's representations or avoided the

9   harm those misrepresentations caused.

10      71.   Further, SpeedyPC violated the UCL's "unlawful" prong by breaching its express

11  warranties to Plaintiff and the California SubClass in violation of Cal. Com. Code § 2313, as

12  detailed in Count III below. SpeedyPC's fraudulent marketing practices also violate California's

13  public policies favoring enforcement of implied and express warranties.

14      72.   SpeedyPC's fraudulent, unfair, and unlawful conduct occurred during the marketing

15  and sale of computer software products, and therefore occurred in the course of Defendant's

16  business practices.

17      73.   SpeedyPC's fraudulent, unfair, and unlawful conduct directly and proximately

18  caused Plaintiff and the California SubClass actual monetary damages in the form of the difference

19  between the purchase price they paid for SpeedyPC Pro (typically $39.97) and its actual value given

20  its actual utility.

21      74.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring

22  Defendant to cease the unfair and unlawful practices described herein, and (2) awarding reasonable

23  costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

24

25

26

27

28

1

2

**SECOND CAUSE OF ACTION**
**Fraudulent Inducement**
**(On Behalf of Plaintiff and the Classes)**

3       75.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

4   herein.

5       76.     As depicted in Figures 1-4 and 10-16, and throughout all Counts of this Complaint,

6   SpeedyPC has used, and continues to use, marketing tactics it knows or reasonably should know are

7   false and misleading.

8       77.     To induce Plaintiff and the Classes to purchase SpeedyPC Pro, SpeedyPC

9   affirmatively represented to Plaintiff and the Classes that SpeedyPC Pro possessed certain utility.

10  Specifically, SpeedyPC represented that SpeedyPC Pro would honestly and accurately scan

11  Plaintiff's and the Classes' computers for harmful errors and problems, increase their computers'

12  speed and stability, protect their computers' security, and otherwise perform the beneficial tasks

13  described in Section II. Further, through SpeedyPC Pro itself, SpeedyPC affirmatively represented

14  that the health of Plaintiff's and the Classes' computers was poor and that numerous errors and

15  problems were causing their computers "Serious" or "Critical" harm.

16      78.     SpeedyPC's affirmative representations were, in fact, false. In particular, SpeedyPC

17  Pro does not increase a computer's performance and stability in the manner SpeedyPC described,

18  nor does it protect the user's security as represented. Likewise, SpeedyPC Pro's representations

19  upon installation were false, because it had not performed any meaningful evaluation of Plaintiff's

20  and the Classes' computers when it warned them of the supposed need for computer repair.

21      79.     The utility of a consumer product is a material term of any transaction because it

22  directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any

23  deception or fraud related to the utility of a product is materially misleading.

24      80.     As SpeedyPC Pro's developer, SpeedyPC knew that its representations about

25  SpeedyPC Pro's utility were false. SpeedyPC intentionally designed its public representations to

26  mislead consumers about SpeedyPC Pro's utility, and programmed SpeedyPC Pro (both the free

27

28

trial and full registered versions) to falsely report computer errors and problems, and to deceive users about their computers' system health, performance, and security.

81.     SpeedyPC intentionally made its misrepresentations to induce Plaintiff and the Classes to rely on them by purchasing, and continuing to use, SpeedyPC Pro.

82.     As consumers lacking the requisite technical expertise to independently gauge SpeedyPC Pro's underlying functionality, and taking SpeedyPC's statements at face value, Plaintiff and the Classes justifiably relied upon SpeedyPC's misrepresentations by purchasing and continuing to use SpeedyPC Pro. They would not have purchased, nor continued to use, SpeedyPC Pro but for the misrepresentations that their computers were in need of repair and that SpeedyPC Pro was capable of making such repairs.

83.     By using false and fraudulent marketing tactics, and exaggerated and fraudulent in-software representations, SpeedyPC has engaged in fraudulent practices designed to mislead and deceive consumers into purchasing, and continuing to use, SpeedyPC Pro.

84.     As a result of their reasonable reliance on SpeedyPC's misrepresentations, Plaintiff and the Classes have been damaged in the amount of the difference between the purchase price they paid for SpeedyPC Pro (typically $39.97) and its actual value given its actual utility.

85.     Plaintiff therefore prays for relief in the amount of the difference between the purchase price they paid for SpeedyPC Pro and its actual value. Plaintiff further alleges that SpeedyPC's conduct and misrepresentations were made with malice and in conscious disregard for Plaintiff's and the Classes' rights, thereby entitling them to punitive damages against SpeedyPC in an amount sufficient to deter such conduct in the future.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranties**
**Pursuant to UCC § 2 and Cal. Com. Code § 2313**
**(On Behalf of Plaintiff and the Classes)**

86.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

87.     Pursuant to the Uniform Commercial Code § 2, and with respect to the California

1    SubClass, California Commercial Code § 2313, SpeedyPC's sale of SpeedyPC Pro included express

2    warranties created by SpeedyPC's affirmation of facts and promises through its advertising,

3    websites, and in-software representations.

4          88.    SpeedyPC's express warranties included affirmations of fact and promises that

5    SpeedyPC Pro would truthfully identify and repair critical computer errors, increase computer

6    speed, performance and stability, protect against privacy risks, remove harmful errors, and perform

7    the tasks depicted in Figures 1-4 and 10-16, and otherwise described in Section II. In actuality,

8    SpeedyPC intentionally designed its software to falsely identify and/or exaggerate the presence of

9    harmful errors and problems, and to misrepresent the overall status of consumers' computers in

10   order to deceive them into thinking the software provided its advertised level of utility. But

11   SpeedyPC Pro simply cannot, and does not, perform the tasks that SpeedyPC warrants it does.

12         89.    Plaintiff and the Classes relied upon SpeedyPC's affirmations and promises when

13   purchasing SpeedyPC Pro, and the affirmations formed the basis for the bargain, in that Plaintiff

14   and the members of the Classes believed they were purchasing software that would honestly and

15   accurately repair their computers. But for SpeedyPC's affirmations and promises, Plaintiff and the

16   Classes would not have purchased SpeedyPC Pro.

17         90.    SpeedyPC breached its express warranties because both the free trial and full

18   registered versions of SpeedyPC Pro did not perform any credible diagnostic test on Plaintiff's or

19   the Classes' computers. Rather, the software artificially and arbitrarily reported that Plaintiff's and

20   the Classes' computers were afflicted with numerous harmful errors and problems that were causing

21   "Serious" or "Critical" damage, and that the performance and security levels of the computers were

22   poor, regardless of their actual condition. Moreover, the software failed to "fix" all of the reported

23   errors, and increase the performance and security of Plaintiff's and the Classes' computers as

24   Defendant warranted it would.

25         91.    SpeedyPC's breach of its express warranties injured Plaintiff and the Classes

26   because they purchased a product that was not worth the price they paid—software that does not

27

28

1   actually perform the beneficial tasks represented to them through SpeedyPC's affirmations and

2   promises.

3       92.    At all times, SpeedyPC was on notice that it had breached its express warranties

4   made to Plaintiff and the Classes, inasmuch as SpeedyPC intentionally designed SpeedyPC Pro to

5   falsely identify and/or exaggerate the presence of harmful errors, and the overall health and security

6   of their computers, and therefore, knew that the software did not meet its warranties to the contrary.

7       93.    SpeedyPC has been on notice that it breached its express warranties ever since the

8   development of its software and corresponding marketing materials. Thus SpeedyPC is fully aware

9   that the software does not actually perform the tasks it claims through representations on its

10  websites and within the software itself.

11      94.    Moreover, on April 18, 2012, Plaintiff and the Classes provided SpeedyPC with

12  *actual* notice that it had breached its express warranties, when counsel for Plaintiff and the putative

13  Classes and SpeedyPC met for an in-person meeting where Plaintiff's counsel presented Plaintiff's

14  and the Classes' complaints regarding the software, the perceived discrepancies between the

15  software's advertised and actual functionality, and the bases of those assertions.

16      95.    Accordingly, Plaintiff and the Classes request maximum damages for SpeedyPC's

17  breach of express warranties as provided by U.C.C. § 2 and, with respect to the California

18  SubClass, California Commercial Code § 2313.

19                        **FOURTH CAUSE OF ACTION**
                            **Breach of Contract**

20                    **(On Behalf of Plaintiff and the Classes)**

21      96.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

22  herein.

23      97.    Plaintiff and the members of the Classes entered into agreements with SpeedyPC

24  whereby SpeedyPC agreed to sell, and Plaintiff and the members of the Classes agreed to purchase,

25  the full version of the SpeedyPC Pro software that would detect and remove legitimate computer

26  errors and problems from Plaintiff's and the Classes' computers. Specifically, SpeedyPC agreed to

27

28

1   sell Plaintiff and the Classes software that was purportedly designed to increase the speed,

2   performance and stability of their computers and also to detect and repair a variety of harmful

3   computer errors, as depicted in Figures 1-4 and 10-16, and otherwise described in Section II. Based

4   on the foregoing offer and representations, Plaintiff and the Classes agreed to purchase SpeedyPC's

5   SpeedyPC Pro software.

6        98.    Plaintiff and the Classes paid, and SpeedyPC accepted, SpeedyPC Pro's purchase

7   price (typically $39.97), and therefore performed their obligations under the contracts.

8        99.    As such, SpeedyPC voluntarily assumed a contractual obligation to provide Plaintiff

9   and the Classes with software that would perform the benefits depicted in Figures 1-4 and 10-16,

10   and otherwise described in Section II, and that it would honestly diagnose and remove problems

11   and/or errors from their computers.

12       100.    SpeedyPC breached its contracts with Plaintiff and the Classes by intentionally

13   designing the full version of the SpeedyPC Pro software to mischaracterize the true condition of

14   computers and further by failing to provide software that performed the tasks depicted in Figures 1-

15   4 and 10-14, and otherwise described in Section II. These obligations were material terms of the

16   agreement.

17       101.    SpeedyPC did not honor these obligations as SpeedyPC Pro did not increase the

18   speed, performance, and stability of Plaintiff's and the Classes' computers, nor did it protect against

19   privacy risks or remove harmful system errors. That is, SpeedyPC Pro did not actually perform the

20   beneficial tasks depicted in Figures 1-4 and 10-14, and otherwise described in Section II, as

21   SpeedyPC represented it would.

22       102.    The aforementioned breaches of contract have directly and proximately caused

23   Plaintiff and the Classes economic injury and other damages, including in the form of the purchase

24   price (or at least a portion thereof) of the SpeedyPC Pro software, because they purchased a product

25   that does not perform as SpeedyPC promised, and therefore lacks the utility contracted for.

26

27

28

**FIFTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Classes)**

103.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

104.     In order to benefit from SpeedyPC's supposed threat-removal software, Plaintiff and the Classes affirmatively allowed SpeedyPC to install SpeedyPC Pro on their computers.

105.     SpeedyPC's agreement to install software to increase the speed, performance and stability of Plaintiff's and the Classes' computers and also to diagnose and remove harmful errors and threats from their computers—as depicted in Figures 1-4 and 10-16, and described in Section II—in exchange for a fee is a valid and enforceable contract between Plaintiff and the Classes on the one hand, and SpeedyPC on the other (as described further in Count IV below).

106.     These obligations were material terms of the agreement, which SpeedyPC ultimately failed to honor.

107.     SpeedyPC acted in bad faith and breached the provisions of that agreement, specifically by not honoring its responsibilities to perform truthful diagnostic and remedial operations, as described herein, and instead, providing software that it intentionally designed to produce false errors reports, misrepresent the actual performance and security statuses of users' computers, and which was incapable of repairing the purported errors as advertised. Indeed, SpeedyPC Pro never provided any of the advertised benefits to Plaintiff's and the Classes' computers as it did not increase the speed, performance, and stability of their computers, nor did it protect against privacy risks or remove harmful system errors.

108.     California contract law recognizes the implied covenant of good faith and fair dealing in every contract.

109.     Implicit in the contract were provisions prohibiting SpeedyPC from engaging in conduct that frustrated or injured Plaintiff's and the Classes' rights to receive the benefits of the agreement.

110. Furthermore, SpeedyPC was under an implicit obligation to comply with the UCL, to be truthful in its advertisements, and to accurately disclose the functionality and utility of its software products. SpeedyPC did not honor any of these obligations.

111. SpeedyPC breached the implied covenant of good faith and fair dealing by failing to (i) provide a full version of the software that would perform the benefits depicted in Figures 1-4 and 10-16, (ii) honestly and accurately inform consumers about the true condition of their computers as described in Section II above, and (iii) fully comply with the proscriptions of applicable statutory law.

112. SpeedyPC's misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in damages to Plaintiff and the Classes in the amount of the difference between the purchase price they paid for SpeedyPC Pro (typically $39.97) and its actual value given its actual utility, which SpeedyPC knowingly and wrongfully retained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rose-Mai Robichaud, on behalf of herself and the Classes, respectfully requests that this Court enter an order:

A. Certifying this case as a class action on behalf of the Classes defined above, appointing Rose-Mai Robichaud as class representative, and appointing her counsel as class counsel;

B. Declaring that Defendant's actions, as set out above, violate California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and constitute fraudulent inducement, breach of express warranties in violation of U.C.C. § 2 and Cal. Com. Code § 2313, breach of contract, and breach of the implied covenant of good faith and fair dealing;

C. Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Classes in an amount to be determined at trial;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Classes, including, *inter alia*: (i) an order prohibiting SpeedyPC from engaging in the

1   wrongful and unlawful acts described herein; (ii) requiring SpeedyPC to disclose and admit the

2   wrongful and unlawful acts described herein; and (iii) requiring SpeedyPC to fully disclose the true

3   nature of its software products now and in the future;

4          E.     Awarding Plaintiff and the Classes their reasonable litigation expenses and

5   attorneys' fees;

6          F.     Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent

7   allowable;

8          G.     Awarding such other injunctive and/or declaratory relief as is necessary to protect

9   the interests of Plaintiff and the Classes; and

10         H.     Awarding such other and further relief as the Court deems reasonable and just.

11                              **DEMAND FOR JURY TRIAL**

12         Plaintiff demands a trial by jury of all issues so triable.

13                                         Respectfully submitted,

14                                         **ROSE-MAI ROBICHAUD**, individually and on
                                           behalf of all others similarly situated,
15
    Dated: December 11, 2012               By: /s/ Benjamin H. Richman
16                                             One of Plaintiff's Attorneys

17                                         JAY EDELSON (Admitted *Pro Hac Vice*)
                                           jedelson@edelson.com
18                                         RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
                                           rbalabanian@edelson.com
19                                         BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
                                           brichman@edelson.com
20                                         CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
                                           cgivens@edelson.com
21                                         EDELSON MCGUIRE, LLC
                                           350 North LaSalle, Suite 1300
22                                         Chicago, Illinois 60654
                                           Tel: 312.589.6370
23
                                           SEAN P. REIS (SBN 184044)
24                                         sreis@edelson.com
                                           EDELSON MCGUIRE, LLP
25                                         30021 Tomas Street, Suite 300
                                           Rancho Santa Margarita, California 92688
26                                         Tel: 949.459.2124

27

28

1

**CERTIFICATE OF SERVICE**

2

    I, Benjamin H. Richman, an attorney, hereby certify that on December 11, 2012, I served the

3

above and foregoing ***First Amended Class Action Complaint*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 11th day of December 2012.

4

5

                  /s/ Benjamin H. Richman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28