1
2
3
4
5
6
7
8    UNITED STATES  DISTRICT COURT

9    Northern District of California

10    San Francisco Division

11   ROSE-MAI ROBICHAUD, individually and          No. C 12 04730 LB
     on behalf of all others similarly situated,

12                                                  **ORDER DENYING DEFENDANTS
                       Plaintiff,                   MOTION TO DISMISS AND STRIKE**
13        v.                                        **CLASS ALLEGATIONS**

14   SPEEDY PC SOFTWARE, a British Columbi
     company,                                       [ECF No. 30]
15
                       Defendant.
16   _____/

17                              **INTRODUCTION**

18         In this putative class action, Plaintiff Rose-Mai Robichaud alleges that SpeedyPC Software

19   fraudulently induced her to buy software to protect her computer and improve its performance by

20   falsely claiming that her computer needed repair and that the SpeedyPC Pro software could solve the

21   problems identified.  Robichaud asserts the following claims: (1) violation of California's Unfair

22   Competition Law, Cal. Bus. & Prof. Code § 17200, (2) fraudulent inducement, (3) breach of express

23   warranties, UCC § 2 and Cal. Com. Code § 2313, (4) breach of contract, and (5) breach of the

24   implied covenant of good faith and fair dealing.  *See* First Amended Complaint ("FAC"), ECF No.

25   27.[1]  SpeedyPC moves to dismiss all claims on the grounds that Robichaud is not a real party in

26
27   _____

28        [1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page numbers at the top of the document.

interest, the complaint does not meet the Class Action Fairness Act's jurisdictional requirements, and Robichaud fails to state claims under Federal Rule of Civil Procedure 12(b)(6). SpeedyPC also moves to strike Robichaud's class allegations for failure to satisfy the requirements of Federal Rule of Civil Procedure 23.

The court finds this matter suitable for determination without oral argument under Civil Local Rule 7-1(b), vacates the hearing set for May 7, 2013, and DENIES SpeedyPC's motion to dismiss.

**STATEMENT**

## I. ALLEGATIONS IN COMPLAINT

Plaintiff Rose-Mai Robichaud is a citizen of California. FAC, ECF No. 27, ¶ 8. Defendant SpeedyPC Software is a Canadian company located in Vancouver, British Columbia, and organized under British Columbia's laws. *Id.* ¶ 9. SpeedyPC develops computer security and optimization software that it describes as "PC cleaning, repair, and optimization toolbox[es]" that can fix a wide variety of computer problems. *Id.* ¶¶ 13-14. One of SpeedyPC's products is called SpeedyPC Pro. *Id.* ¶ 14.

### A. The SpeedyPC Software

SpeedyPC promotes SpeedyPC Pro through online advertisements and on websites as being capable of increasing computer speed and performance, removing harmful computer errors, and protecting users' privacy and security. *Id.* ¶ 15. SpeedyPC Pro advertisements make the following claims:

- "Boost your PC's speed and performance: SpeedyPC Pro cleans, optimizes and protects your computer for improved speed, performance and operation."

- "Find your PC's performance potential: SpeedyPC Pro cleans your computer with just a couple of clicks. It also utilizes premium optimization tools so you get the most out of your PC!"

- "SpeedyPC Pro improves your PC's health."

*Id.* ¶ 16.

Consumers who click on one of SpeedyPC's advertisements are directed to one of SpeedyPC's websites, which warn consumers about various risks to their computers. *Id.* ¶ 17. These representations include:

- "Your computer has a lot going on. If it has too much happening, your speed and performance can take a drastic swan dive."

- "If someone has access to your computer, they could learn a lot about you. Information stored on your PC through your normal Internet and file use could be used for identity theft, targeting phishing scams and other fraud attempts."

- "Your computer is like a squirrel, storing its information wherever it can. Over time this means parts of your files are spread throughout your hard drive. In order for the files to be used, your computer must track down all of the parts and reassemble them. This can take a lot of time."

*Id.* SpeedyPC's website also states that SpeedyPC Pro can detect and fix a number of errors that cause common PC problems, including:

- "Malicious programs can cause all kinds of problems for you and your computer. Some kinds of malware try to grab your confidential data, such as banking information or passwords . . . SpeedyPC Pro's scan is designed to find [and] remove[] malware to make your PC safe and stable."

- "The Windows registry is a huge factor in your computer's operation. If the registry is not healthy, your computer needs help! . . . SpeedyPC Pro probes the Windows registry to clean: ActiveX, Shared dlls, Uninstall entries, File path references, Shell extensions, Application paths, Startup entries, and much more."

- "Information stored on your PC through your normal Internet and file use could be used for identity theft, targeted phishing scams and other fraud attempts. SpeedyPC Pro cleans away all traces of your private and confidential information."

*Id.* (alterations in original).

Regardless of where the consumer encounters these statements, SpeedyPC recommends that the consumer download SpeedyPC Pro to protect, repair, and optimize their computers, thereby misrepresenting the utility of SpeedyPC software. *Id.* ¶ 19. This is the first phase of SpeedyPC's scheme to defraud. *Id.*

Robichaud also alleges that SpeedyPC makes express warranties that SpeedyPC Pro was designed to:

- "protect [you] and your PC by removing malware and privacy files"

- "clean[] away all traces of your private and confidential information"

- "manage[] your computer's resources for improved performance"

- "improve[] PC startup times"

- "optimize[] memory"

- "eliminate clutter, error messages, freezing, crashes or erratic performance"

*Id.* ¶ 21 (alterations in original).[2]

These representations do not reflect SpeedyPC Pro's true capabilities. *Id.* ¶ 22. At its core, SpeedyPC Pro has two main functions. First, it is a registry cleaner – a program designed to remove unwanted or redundant items from the "registry" database of configuration settings that facilitates the operation of applications in Microsoft Windows-based PCs. *Id.*, n.1. Second, it removes superfluous "temporary" files from a user's hard drive. *Id.* These functions "do not come close to squaring with SpeedyPC's representations about the functionality of SpeedyPC Pro." *Id.* For example, neither of these functions removes viruses, credibly protects a user's privacy, removes serious security threats, or prevents damaging PC errors. *Id.*

The second phase of SpeedyPC's allegedly deceptive marketing scheme is convincing consumers that their computers have the problems that SpeedyPC claims SpeedyPC Pro can fix. *Id.* ¶ 23. To that end, SpeedyPC's websites recommend that the consumer download the trial version of SpeedyPC Pro to detect issues that the product is designed to identify and fix. *Id.* ¶ 24. The complaint shows four screen shots of different areas: (1) boosting PC speed and performance; (2) improving PC health; (3) fixing, optimizing, and protecting; and (4) benefits of SpeedyPC Pro (clean a PC of the ActiveX and registry errors that slow it down; removing malware and privacy files; opening unknown extensions with the File Manager tool; optimizing memory by defragging; and improving performance). *Id.*, figs. 1-4. These marketing materials lead consumers to think that SpeedyPC Pro's free scan will detect errors that SpeedyPC says that SpeedyPC Pro will fix (e.g., harmful errors, malware, and security and privacy threats), but this is not true. *Id.*

After installing the trial version, the third phase of SpeedyPC's deceptive scheme is to convince consumers that their computers have hundreds of harmful errors that SpeedyPC Pro can fix if they purchase the full, registered version. *Id.* ¶ 26. The trial version tells the consumer that "your system needs to perform a scan." *Id.* ¶ 27, fig. 5. After the scan is complete, SpeedyPC Pro displays a warning "in alarmist fashion" that hundreds or thousands of serious problems exist on the computer

---

[2] The FAC also contains pictures that Robichaud alleges depict screenshots of online advertisements for SpeedyPC Pro that make clams similar to those described above. *See* FAC, ECF No. 27, ¶ 24, figs. 1-4.

and "require attention." *Id.* ¶ 28. The software warns that the "Performance" and "Security" of the consumer's PC is in "Serious" or "Critical" condition and provides an itemized list of the errors purportedly identified. *Id.* ¶ 28, fig. 6. The problems are broken down by category and accompanied by a gauge that ranges from "Good" to "Critical" and represents the "Damage Level" caused by the problem. *Id.*

SpeedyPC Pro then displays a half-page warning that "SpeedyPC Pro has determined that your computer requires immediate attention!" and is in "Serious" or "Critical" condition. *Id.* ¶ 29, fig. 6. "The user then is given the option to purchase the full version of the software to 'fix' and repair the harmful errors detected." *Id.*

Robichaud engaged a computer forensics expert to examine SpeedyPC Pro. *Id.* ¶ 31. The expert concluded that the free and registered versions of SpeedyPC Pro are designed to always report that a user's computer is severely damaged, regardless of the condition or type of computer the software is installed on. *Id.* ¶ 31. Plaintiff's expert concluded that the errors detected as "Serious" or "Critical" are not credible threats to a computer's functionality. *Id.* Figure 7 shows a diagnostic scan of a brand-new and never-used computer that reports overall performance as poor, 125 errors require attention, and at least some of those errors are causing "Serious" or "Critical" damage to the computer system. *Id.* ¶¶ 32-33, fig. 7. (All figures in the complaint are testing of a brand-new computer. *Id.* ¶ 32 n.2.)

Robichaud's expert also planted fake, innocuous errors on a computer. *Id.* ¶ 34. The example in figure 8 is the non-damage-causing FakeError01.log file, and SpeedyPC Pro reported it as causing the computer "Serious" or "Critical" damage. *Id.*, fig. 8.

SpeedyPC Pro also identifies naturally recurring system files as threatening, meaning, it will always report that certain non-detrimental files are causing the computer harm. *Id.* ¶ 35. Figure 9 shows an example in the form of recurring Microsoft Windows log files. *Id.,* fig. 9.

In all, the expert found that SpeedyPC programmed the free and registered versions of SpeedyPC Pro to (1) always identify problems on a user's computer, regardless of the computer's actual condition, (2) inflate the number of errors and security risks detected on the computer, (3) characterize innocuous items as errors, (4) arbitrarily report that a user's "Security" and

"Performance" are poor without credibly assessing these issues, and (5) arbitrarily characterize individual errors as "Serious" or "Critical." *Id.* ¶ 36.

SpeedyPC sells SpeedyPC Pro to consumers for $39.97, but the software does not provide the advertised benefits, and thus SpeedyPC Pro does not deliver on its promises to users. *Id.* ¶ 38.

**B. Robichaud's Experience**

Robichaud alleges that in or around September 2012, her computer began malfunctioning. *Id.* ¶ 42. She noticed that it began to run slower and freeze often, and she received numerous error messages on her computer screen. *Id.* She searched the internet and noticed an advertisement for SpeedyPC's Software that was similar to the advertisements previously described. *Id.* She viewed Defendant's website, www.SpeedyPC.com, and read SpeedyPC's statements about SpeedyPC Pro, which Robichaud characterizes as express warranties. *Id.* ¶ 44. The FAC also includes several screenshots from SpeedyPC's websites in which SpeedyPC makes representations that are the same or substantially similar to the representations Robichaud viewed (and that are set forth above). *See id.* ¶ 44, figs. 10-16.

Relying upon SpeedyPC's representations, Robichaud downloaded and installed SpeedyPC Pro, which then scanned her computer. *Id.* ¶¶ 45-46. SpeedyPC Pro reported that it detected over a thousand serious errors, some of which were causing her computer "Serious" or "Critical" damage *Id.* SpeedyPC Pro also represented her computer's "Performance" and "Security" levels by depicting gauges with a needle pointing "in the red" (indicating that the levels were "Serious" or "Critical"). *Id.* SpeedyPC Pro warned her that the problems were decreasing her computer's performance and compromising her security and urged her to purchase the software to "fix" these problems. *Id.* Robichaud clicked on a button labeled "Fix All," which forwarded her to a SpeedyPC website that urged her to register SpeedyPC Pro to fix the problems identified. *Id.* ¶ 47. After reaching the registration webpage, SpeedyPC again told her that it "detected some problems that needed to be fixed" and instructed her to "Register SpeedyPC Pro now!" *Id.* (citing fig. 10). Relying on these representations about the software's capabilities and her computer's condition, Robichaud paid approximately $40 to activate SpeedyPC Pro (the 2012 version) to repair the purported errors. *Id.* ¶ 48.

In reality, SpeedyPC did not actually detect thousands of "Serious" or "Critical" errors because the program arbitrarily detects and reports problems and cannot perform the beneficial tasks described in its marketing materials and advertisements. *Id.* ¶ 49. The software did not accurately identify or report the actual condition of her computer. *Id.* Robichaud was misled into believing that her computer was at serious risk and that she needed to pay to register SpeedyPC in order to repair it. *Id.* Similarly, the full version of SpeedyPC Pro could not and did not perform as advertised. *Id.* ¶ 50. Instead, SpeedyPC designed it, like the trial version, to invariably return false errors as described above. *Id.* Every time Robichaud ran SpeedyPC Pro, it reported harmful errors that she needed to fix despite the fact that she repeatedly ran and "fixed" the reported errors. *Id.* Her computer continued to suffer from the same problems she had before she bought and ran SpeedyPC Pro. *Id.*

## II. CLASS ALLEGATIONS

The class definitions are as follows:

**Class**: All individuals and entities in the United States and its territories that have purchased SpeedyPC Pro.

**California SubClass**: Al individuals and entities in the State of California that have purchased SpeedyPC Pro.

*Id.* ¶ 51. Robichaud alleges that "SpeedyPC has sold its software to thousands of Class and California SubClass members . . . ." *Id.* ¶ 52.

## III. PROCEDURAL HISTORY, CLAIMS, AND RELIEF SOUGHT

This original Plaintiff in this action, Phyllis Bastion, filed suit on September 11, 2012. Compl., ECF No. 1. SpeedyPC filed a motion to dismiss the Complaint on November 20, 2012. ECF No. 24. In response, Plaintiffs' counsel filed an amended complaint in which Rose-Mai Robichaud replaced Phyllis Bastion as the named Plaintiff. *See* FAC, ECF No. 27.

The FAC states five claims against SpeedyPC, the first on behalf of the SubClass and the second through fifth on behalf of the entire class: (1) violation of the fraudulent, unfair, and unlawful prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* based on the actions described above, *see id.* ¶¶ 59-74; (2) fraudulent inducement, *see id.* ¶¶ 75-85; (3) breach of express warranty under the Uniform Commercial Code § 2 and Cal. Com. Code § 2313, *see id.*

¶¶ 86-95; (4) breach of contract in the form of SpeedyPC's breach of the agreements between buyers in the class and SpeedyPC by not performing as promised, *see id.* ¶¶ 96-102; and (5) breach of the implied covenant of good faith and fair dealing, alleging that "California contract law recognizes the implied covenant of good faith and fair dealing in every contract" and that SpeedyPC was implicitly obligated to comply with the UCL, *see id.* ¶¶ 103-12.

Robichaud seeks actual damages based on either SpeedyPC Pro's purchase price or a portion thereof, *id.* ¶ 102, or the difference between the purchase price and its actual value, *id.* ¶¶ 73, 85, 112. She also seeks an order requiring SpeedyPC to cease the allegedly unfair and unlawful practices, punitive damages, costs, and attorneys' fees. *Id.* ¶ 74, 85.

On January 9, 2013, SpeedyPC filed its motion to dismiss the FAC ("Motion"). ECF No. 30.

## ANALYSIS

SpeedyPC moves to dismiss the FAC on the grounds that (1) Robichaud failed to meet the jurisdictional requirements of the Class Action Fairness Act ("CAFA"), (2) Robichaud did not properly substitute for prior plaintiff Phyllis Bastion and is not "the real party in interest," and (3) Robichaud fails to state claims. Mot., ECF No. 30 at 13-28. SpeedyPC also moves to strike Robichaud's class allegations for failure to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b).

## I. JURISDICTION UNDER CAFA

SpeedyPC contends that the FAC lacks allegations sufficient to satisfy the amount in controversy and class member requirements of CAFA, 28 U.S.C. § 1332(d). Mot., ECF No. 30 at 14-15. Robichaud counters that the FAC is sufficient. Opp'n, ECF No. 36 at 15-18.

Under CAFA, federal district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs; (2) the class contains 100 or more putative class members; and (3) there is at least minimal diversity between the parties. 28 U.S.C. §1332(d).

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. Pro. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the jurisdiction to

grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Where – as in this case – a defendant challenges a complaint for lack of subject matter jurisdiction on its face, the court takes all material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

### A. CAFA's 100 Putative Class Members Requirement

SpeedyPC argues that the court lacks subject matter jurisdiction because the FAC "fails to plead any facts to establish that there are at least 100 members in the putative class . . . ." Mot., ECF No. 30 at 14. SpeedyPC provides no support or explanation for its conclusion.

The FAC alleges that as a result of SpeedyPC's conduct, "thousands of consumers have been, and continue to be, duped into buying software that they do not need." FAC, ECF No. 27, ¶ 7. Similarly, the class allegations state: "[t]he exact number of members of the Classes is unknown to Plaintiff at this time, but on information and belief, SpeedyPC has sold its software to thousands of Class and California SubClass members throughout the country and the State of California . . . ." *Id.* ¶ 52.

The court accepts the FAC's allegations as true and denies the motion to dismiss. *See Kaplan*, 792 F.2d at 898.

### B. CAFA's Amount in Controversy Requirement

SpeedyPC also argues that Plaintiff has not met CAFA's $5,000,000 amount in controversy threshold. Mot., ECF No. 30 at 14-15. Robichaud counters that even adopting Speedy's calculations, the FAC contains sufficient allegations. Opp'n, ECF No. 36 at 15-18.

The amount in controversy is generally determined from the face of the pleadings. *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1130-31 (9th Cir. 2000). The sum claimed by the plaintiff controls so long as the claim is made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). "To justify dismissal, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Budget Rent A-Car, Inc. v.*

1    *Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting *St. Paul Mercury Indem. Co.*, 303 U.S.

2    at 289).

3      Here, the FAC alleges that the amount in controversy exceeds $5 million. FAC, ECF No. 27,

4    ¶ 10. Thus, SpeedyPC must establish to a legal certainty that the amount in controversy is less than

5    that amount. SpeedyPC does not meet its burden. It posits hypothetical figures and extrapolates

6    calculations based upon them. *See, e.g.,* Mot., ECF No. 30 at 15. SpeedyPC does not attempt to link

7    its hypothetical calculations to any evidence. Because SpeedyPC has not met its burden and there is

8    no suggestion the allegation was made in bad faith, the court DENIES SpeedyPC's motion to

9    dismiss on this ground.

10    **II. SUBSTITUTION OF ROBICHAUD FOR BASTION**

11      In the initial complaint, Bastion was the plaintiff. *See* ECF No. 1. Now Robichaud is. *See* FAC,

12    ECF No. 27. SpeedyPC challenges this in a conclusory paragraph in the motion to dismiss (and

13    without any legal analysis), arguing that (1) the substitution shows that Bastion was not the real

14    party in interest under Federal Rule of Civil Procedure 17(a), (2) substitution was improper because

15    Bastion's interest was not transferred to Robichaud under Rule 25, (3) Robichaud did not seek leave

16    of the court to intervene and "was apparently not substituted," and (4) the FAC does not plead facts

17    showing Robichaud is the real party in interest. *See* Mot., ECF No. 30 at 13. In its reply brief,

18    SpeedyPC also argues that the FAC does not allege that Robichaud suffered any injury in fact

19    sufficient to establish that she has standing or is a real party in interest. Reply, ECF No. 37 at 3.

20      Boiled down, the FAC alleges that Robichaud bought SpeedyPC Pro for $40 in reliance on

21    SpeedyPC's representations about how it would fix her computer problems. FAC ¶ 48. She quotes

22    numerous statements that SpeedyPC allegedly made about SpeedyPC Pro's capabilities and that she

23    relied on. *See, e.g.,* FAC, ECF No. 27, ¶¶ 16-29, 44-45. And she alleges that SpeedyPC Pro did not

24    and could not function as advertised. *Id.* ¶¶ 30-38, 49-50.

25      The allegations are sufficient to establish Robichaud's standing and status as a real party in

26    interest.

27      As to standing, the allegations satisfy constitutional requirements and prudential considerations.

28    Article III's constitutional requirements are as follows: (1) the party invoking federal jurisdiction

must have suffered some actual or threatened injury; (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision would likely redress or prevent the injury. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180–81, 185 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Valley Forge Christian College,* 454 U.S. at 472; *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1057 (9th Cir. 1996). The prudential limitations on federal court jurisdiction require the following: (1) a party must assert his own legal rights and interests, not those of others; (2) courts will not adjudicate "generalized grievances;" and (3) a party's claims must fall within the zone of interests that is protected or regulated by the statute or constitutional guarantee in question. *See Valley Forge Christ. College,* 454 U.S. at 474-75; *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009).

The injury here is the allegedly bad product that Robichaud purchased in reliance on SpeedyPC's representations. SpeedyPC does not address the allegations in any detail and only concludes that Robichaud did not meet her burden. *See* Reply, ECF No. 37 at 3. The court disagrees and finds that Robichaud's allegations satisfy the standing requirement.

Similarly, SpeedyPC does not explain why Robichaud is not a real party in interest, and her allegations establish that injury and interest sufficiently.

Really what SpeedyPC is challenging is a substitution of plaintiffs. *See* Mot., ECF No. 30 at 13 (arguing that Bastion did not file a motion to transfer her interest and Robichaud did not seek leave to intervene or substitute for Bastion).

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading once as a matter of course up to 21 days after service of a responsive pleading or motion under Rule 12(b). A party "may make a Rule 15(a) amendment to add, substitute, or drop parties to the action." 6 Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 1474 (3d ed. 2012) (collecting cases).

In class actions, where a named Plaintiff's individual claims fail or become moot for a reason that does not affect the viability of the class claims, courts regularly allow or order the plaintiffs' counsel to substitute a new representative plaintiff. *Almeida v. Google, Inc.*, No. C-08-02088 RMW, 2009 WL 3809808, at *3 n.2 (N.D. Cal. Nov. 13, 2009) (noting that those courts that did not permit pre-class certification substitution also found that the amendment would prejudice the defendants);

*Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006) (Posner, J.) (noting that "substitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable ('routine') feature of class action litigation . . . in the federal courts . . . ." and collecting cases); *see also Slaughter v. Uponor, Inc.*, No. 2:08-CV-01223-RCJ, 2012 WL 2780049 (D. Nev. July 9, 2012) (allowing substitution of class representative and denying motion to dismiss where motion revealed statutory bar to representative plaintiff's claims); *Nat'l Fed.'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1201 (N.D. Cal. 2007) (granting summary judgment against named plaintiffs but allowing leave to amend with substituted class representative); *Kremens v. Bartley*, 431 U.S. 119, 135 (1977) (ordering substitution of class representatives where names plaintiffs' claims were found moot).

In reply, SpeedyPC attempts to distinguish *Kremens*, *Nat'l Fed.'n of Blind*, and *Slaughter* because the court granted the plaintiffs leave to substitute in those cases. While that is correct, it does not help SpeedyPC. Those cases had progressed past the point where the parties could amend as of right. Here, the amended complaint was filed as a matter of right.

Regardless, SpeedyPC does not argue that it was prejudiced by the substitution, and the court sees no need to require Robichaud to file a new suit alleging the same claims now before the court. *See Almeida*, 2009 WL 3809808, at *3 n.2. In sum, even if substituting Robichaud under Rule 15(a) was procedurally improper, the court would allow substitution of a new representative plaintiff under these circumstances.

## III. FAILURE TO STATE A CLAIM

SpeedyPC next moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Mot., ECF No. 30 at 16-28. The court sets forth the legal standards and then addresses the claims.

### A. Legal Standards

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County,* 487 F.3d 1246, 1249 (9th Cir. 2007).

A plaintiff must state claims grounded in fraud with particularity. Federal Rule of Civil Procedure 9(b). "Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Rule 9(b) applies to cases brought in federal court irrespective of whether the substantive law is state or federal. *Id.* at 1102. Therefore, in an action based on state law, while a district court will rely on the applicable state law to ascertain the elements of fraud that a party must plead, it will also follow Rule 9(b) in requiring that the circumstances of the fraud be pleaded with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Even when fraud is not a necessary element of the claim, a plaintiff may still allege that the defendant's conduct was fraudulent. Such allegations can take two forms: (1) the plaintiff may allege a unified course of fraudulent conduct, in which case the claim is deemed to be "grounded in fraud," or (2) the plaintiff may allege some fraudulent and some non-fraudulent conduct. *Vess*, 317 F.3d at 1103-04. In the first case, when the claim is "grounded in fraud," the pleading of that claim as a whole is subject to Rule 9(b)'s particularity requirement. *Id.* at 1104. In the second instance, only the allegations of fraudulent

1    conduct must satisfy the heightened pleading requirement, while the remaining allegations are

2    subject to the normal pleading standard of Rule 8(a). *Id.* at 1104-05. "Because a dismissal of a . . .

3    claim grounded in fraud for failure to comply with Rule 9(b) has the same consequence as a

4    dismissal under Rule 12(b)(6), dismissals under the two rules are treated in the same manner." *Id.* at

5    1107.

6       **B. Claims**

7       Robichaud asserts the following claims: (1) violation of California's Unfair Competition Law,

8    Cal. Bus. & Prof. Code § 17200, (2) fraudulent inducement, (3) breach of express warranties, UCC §

9    2 and Cal. Com. Code § 2313, (4) breach of contract, and (5) breach of the implied covenant of good

10   faith and fair dealing. *See* FAC, ECF No. 27.

11      As a preliminary issue, the issue here – as in *Gross v. Symantec Corp.*, No. C 12-00154 CRB,

12   2012 WL 3116158 (N.D. Cal. Jul. 31, 2012) – is whether all of Robichaud's claims sound in fraud

13   (and are subject to the heightened pleading requirement of Rule 9(b)) or whether some do not.[3]

14   Robichaud acknowledges that some claims are fraud claims but others (such as the breach of

15   contract claim) are not.  Opposition, ECF No. 36 at 19.

16      Here, all of Robichaud's claims are based on a uniform course of fraudulent conduct and must be

17   pleaded with particularity. *See Gross*, 2012 WL 3116158, at *3 (in a factually and legally similar

18   case brought by Robichaud's attorneys, finding that all claims needed to be pleaded with

19   particularity because they relied on a unified fraudulent course of conduct).  Robichaud relies on

20   *Ranger v. T-Mobile USA, Inc.*, No. EDCV 08-1518VAP(JCX), 2009 WL 416003, at *2 (C.D. Cal.

21   Feb. 19, 2009) in which the district court found that the plaintiff's CLRA and UCL claims sounded

22   in fraud, but his breach of contract and unauthorized telephone charges claims did not.  Here,

23   however, Robichaud alleges SpeedyPC breached its contract and warranty obligations intentionally

24   and by mischaracterizing SpeedyPC Pro's capabilities and failing to live up to those promises. *See*

25

26          [3]  Under California law, the elements of a fraud claim are: (1) misrepresentation (false
     representation, concealment, or nondisclosure), (2) knowledge of falsity, (3) intent to induce
27   reliance, (4) justifiable reliance, and (5) damages. *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.
28   4th 951, 973-74 (1997).

1    FAC, ECF No. 27, ¶¶ 88, 100, 107. These are the same allegations that support her UCL and

2    fraudulent inducement claims and establish that all claims "rely on a unified fraudulent course of

3    conduct . . . ." *Kearns*, 567 F.3d at 1125.

4         As discussed in the next sections, the court holds that Robichaud pleaded her claims sufficiently.

5         ***1. UCL Claim***

6         Plaintiff's first claim alleges violations of all three prongs of California's UCL. *See* FAC, ECF

7    No. 27, ¶¶ 59-74. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

8    Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes

9    three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or

10   'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see*

11   *also Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

12   To support a claim for a violation of the UCL, a plaintiff cannot simply rely on general common law

13   principles. *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061,

14   1072 (2004).

15        The UCL also incorporates other laws and treats violations of those laws as unlawful business

16   practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225

17   F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as

18   the basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). In

19   addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the

20   practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

21        Any individual who has "has suffered injury in fact and has lost money or property as a result of

22   the unfair competition" may initiate suit. Cal. Bus. & Prof. Code § 17204. To have standing, a

23   plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an

24   'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between

25   the defendant's alleged UCL violation and the plaintiff's injury in fact. *Rubio v. Capital One Bank*,

26   613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted).

27        SpeedyPC argues that the FAC fails to satisfy the Rule 9(b) pleading standard with regard to this

28   claim. Mot., ECF No. 30 at 19. After conceding that the FAC alleges "more or less, the time, place,

and content of the alleged misrepresentations," SpeedyPC argues that the UCL claim is

insufficiently pleaded because the following allegations are missing:

    1. Identification of the specific advertisements upon which Robichaud relied;

    2. What is false or misleading about the statements, and why they are false in this instance;

    3. Robichaud's computer's make, model, age, operating system;

    4. Any specific computer problem that Robichaud was trying to correct;

*Id.* at 19-20.

First, the FAC identifies the advertisements sufficiently. It quotes them, provides screenshots, and specifies where Robichaud viewed them. Though she is not able to identify the exact advertisements she viewed, she alleges that the advertisements she viewed were "substantially similar" to those described and depicted in the FAC. FAC, ECF No. 27, ¶ 43. *See TransFresh Corp. v. Ganzerla & Assoc. Inc.*, 862 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012) (allegedly false statements on website were specifically identified, even where "described in a somewhat cursory fashion"). (The court would not expect a real-time screen shot by a consumer buying a product.)

Second, the FAC alleges sufficiently why SpeedyPC's statements were false, what is misleading about them, and why they are false in this instance. *See* FAC, ECF No. 27, ¶¶ 22, 31-36. For example, Robichaud alleges that SpeedyPC overstated the number and severity of errors allegedly identified in scan results in order to induce her and the class members to purchase SpeedyPC Pro. Robichaud also alleges that SpeedyPC Pro cannot "credibly protect a user's privacy, remove serious security threats, nor prevent damaging PC errors," despite making claims that it can perform these functions. *Id.* ¶ 22. Thus, the FAC alleges that SpeedyPC made false and misleading statements about SpeedyPC Pro and that the statements were false as to all purchasers, including Robichaud.

Third, the court cannot see how the technical information about Robichaud's computer is required under Rule 9(b), and SpeedyPC provides no support for its contention otherwise.

Fourth, the FAC alleges sufficiently the problems that Robichaud was having with her computer as context for her purchase of SpeedyPC Pro. *Id.* ¶ 42.

In sum, the court finds that Robichaud's UCL claim is sufficiently pleaded under Rule 9(b).

SpeedyPC also argues that Robichaud's UCL claim under the "unlawful" prong fails because it

1   is entirely predicated on her breach of warranty claim, which should also be dismissed.  Mot., ECF

2   No. 30 at 20.  Because the court holds below that claim survives, and all of SpeedyPC's other UCL

3   arguments fail, the court denies SpeedyPC's motion to dismiss Robichaud's UCL claim.

4   ### 2. Fraudulent Inducement Claim

5   Fraudulent inducement has five elements: (1) misrepresentation, (2) knowledge of the falsity of

6   the representation, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damages.

7   *Swingless Golf Club Corp. v. Taylor*, 732 F. Supp. 2d 899, 908 (N.D. Cal. 2010) (citing *Stewart v.*

8   *Ragland,* 934 F.2d 1033, 1043 (9th Cir. 1991)).

9   SpeedyPC also moves to dismiss the fraudulent inducement claim on the ground that it

10  insufficiently pleads the factual allegations supporting a claim for fraud.  *See* Mot., ECF No. 30 at

11  21-23.  Its arguments are identical to those in support of its UCL claim, and the court rejects them

12  for the reasons in the previous section.

13  ### 3. Breach of Express Warranty Claim

14  Robichaud alleges that SpeedyPC breached express warranties under California Commercial

15  Code section 2313 and the UCC § 2 that SpeedyPC Pro could "identify and repair critical computer

16  errors, increase computer speed, performance and stability, protect against privacy risks, remove

17  harmful errors, and perform the tasks" promised in its advertisements.  FAC, ECF No. 27, ¶¶ 86-95.

18  California Commercial Code section 2313 states, in relevant part:

19  (1)  Express warranties by the seller are created as follows:

20  (a)  Any affirmation of fact or promise made by the seller to the buyer which relates to
    the goods and becomes part of the basis of the bargain creates an express warranty that
21  the goods shall conform to the affirmation or promise.

22  (b)  Any description of the goods which is made part of the basis of the bargain creates an
    express warranty that the goods shall conform to the description. . . .
23
    (2)  It is not necessary to the creation of an express warranty that the seller use formal
24  words such as "warrant" or "guarantee" or that he have a specific intention to make a
    warranty, but an affirmation merely of the value of the goods or a statement purporting to
25  be merely the seller's opinion or commendation of the goods does not create a warranty.

26  Cal. Com. Code § 2313; *see also* UCC § 2-313.  In order to plead a breach of express warranty, a

27  plaintiff must allege: (1) the exact terms of the warranty, (2) reasonable reliance on those terms, and

28  (3) a breach of warranty that proximately caused the plaintiff's injury.  *Sanders v. Apple Inc.*, 672 F.

Supp. 2d 978, 986-87 (N.D. Cal. 2009); *See Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); Cal. Com. Code § 2313(1). "Statements constituting 'mere puffery' cannot support liability under a claim for breach of warranty." *Sanders*, 672 F. Supp. 2d at 987.

SpeedyPC argues that the express warranty claim fails because it pleads neither the exact terms of the warranty nor specific and unequivocal statements in the advertisements sufficient to constitute a warranty. Mot., ECF No. 30 at 24. In response, Robichaud points to the screenshots of SpeedyPC's website depicting claims that SpeedyPC Pro, among other things, "finds and removes malware to make your PC safe and stable" and "cleans away all traces of your private and confidential information." FAC, ECF No. 27, ¶ 45, figs. 10-16. The FAC also states "[m]ore specifically, SpeedyPC expressly warrants through its website that SpeedyPC was designed to perform the following tasks," lists those tasks, and then alleges that SpeedyPC Pro can not perform many of those tasks listed. *See id.* ¶¶ 21-22. Thus, the allegation that these statements are warranties is pleaded with the requisite specificity. The FAC also alleges that Robichaud relied on these representations in purchasing SpeedyPC Pro and that she later learned that it could not perform as warranted. *Id.* ¶¶ 46, 50. Accordingly, the court DENIES SpeedyPC's motion to dismiss this claim.

### 4. Breach of Contract

A claim for breach of contract must plead: (1) the existence of a contract, (2) a breach of the contract by defendant, (3) performance or excuse of non-performance on behalf of plaintiff, and (4) damages suffered by plaintiff as a result of defendant's breach. *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989). To sustain this cause of action, plaintiffs must either attach a copy of the contract to the complaint or plead the essential terms of the contract. *Gross*, 2012 WL 3116158, at *11.

Robichaud alleges that she formed a contract with SpeedyPC when she agreed to purchase SpeedyPC Pro, which "was purportedly designed to increase, the speed, performance and stability of their computers and also to detect and repair a variety of harmful computer errors . . . ." ECF No. 27, ¶ 97.

SpeedyPC challenges the allegations for failure to set out the specific terms of the contract and

1    for failure to show that SpeedyPC consented to enter into the contract.  Mot., ECF No. 30 at 25-26.

2    As to the terms of the contract, Robichaud counters that the terms of the contract were that

3    SpeedyPC would supply software that would perform according to SpeedyPC's claims and that

4    Robichaud would pay $39.97.  *See* Opp'n, ECF No. 36 at 26-27; *see* FAC, ECF No. 27 ¶¶ 97-100.

5    The court agrees that the terms are alleged with sufficient specificity.

6        SpeedyPC's consent argument is that the FAC does not allege whether SpeedyPC would have

7    consented to the purchase had it known of the actual problems in Robichaud's computer.  Mot., ECF

8    No. 30 at 26.  The complaint alleges that Robichaud navigated to SpeedyPC's website based on its

9    advertisements and that SpeedyPC willingly accepted Robichaud's money and sold SpeedyPC Pro to

10   Robichaud.  SpeedyPC cites no authority where a court dismissed a breach of contract on this basis.

11              ### 5. *Breach of Covenant of Good Faith and Fair Dealing*

12       The covenant of good faith and fair dealing is implied in every contract and prevents one party

13   from "unfairly frustrating the other party's right to receive the benefits" of the contract.  *See Guz v.*

14   *Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000).  The elements of a claim for breach of the covenant

15   of good faith and fair dealing are as follows:  (1) the plaintiff and the defendant entered into a

16   contract; (2) the plaintiff did all or substantially all of the things that the contract require him to do

17   or that he was excused from having to do; (3) all conditions required for the defendant's

18   performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive

19   the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.  *See* Judicial

20   Counsel of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc.*

21   *v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007).

22       SpeedyPC reiterates its arguments that the FAC fails to allege the terms of the contract, what

23   was wrong with Robichaud's computer, and whether SpeedyPC Pro was appropriate to fix those

24   problems.  *See* Mot., ECF No. 30 at 27-28.  The court rejects those challenges for the reasons

25   discussed previously.

26       SpeedyPC's only other challenge to this claim is that it "seeks to improperly expand the scope of

27   the covenant of good faith and fair dealing to include general public policy interests not directly tied

28   to the purpose of the contract between SpeedyPC and Plaintiff Robichaud through a reference to

'consumers' and the 'proscriptions of applicable statutory law.'" Mot., ECF No. 30 at 28. SpeedyPC otherwise fails to explain why this mandates dismissal, and the claim is otherwise alleged adequately. The court denies the motion to dismiss it.

**IV. Motion to Strike Class Allegations**

Finally, SpeedyPC moves to strike the FAC's class allegations on the grounds that Robichaud will not be able to meet the class certification requirements. Mot., ECF No. 30 at 28-31. According to SpeedyPC, striking the class allegations is appropriate because variations in state laws and the predominance of individual issues will preclude certification of the nationwide class. Mot., ECF No. 30 at 29-31.

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are regarded with disfavor, as they are often used as delaying tactics, and should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party. *California ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981).

Class allegations generally are not tested at the pleadings stage and instead are tested after one party has filed a motion for class certification. *See, e.g., Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). Nonetheless, as the Supreme Court has explained, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Thus, a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained. *See, e.g., Sanders*, 672 F. Supp. 2d at 990–91

(N.D. Cal. 2009).

SpeedyPC first argues that the court should strike the class allegations because differences in state law preclude certification. Mot., ECF No. 30 at 29. It cites cases for the proposition that the elements of fraud claims and breach of warranty claims differ among states. *Id.* at 29-30. It also cites cases for the proposition that variations in state law must be addressed in a class certification inquiry. *Id.* But SpeedyPC fails to show why this case is different from any other nationwide class or why differences in state law preclude the FAC's class claims.

Finally, SpeedyPC argues that the predominance of individual issues will preclude class certification. *Id.* at 30-31. It argues that the court will have to evaluate individualized questions with regard to each putative class member's computer, the advertisements viewed, and the factors that influenced each putative class member's decision to purchase SpeedyPC Pro. *Id.* In addition, SpeedyPC claims that "[t]he court would have to evaluate the computer forensics opinions as to each and every one of the computers in question, which evaluation would have had to had [*sic*] been performed immediately after the first SpeedyPC Pro scan, since otherwise it would be impossible to identify what errors existed either before or after the SpeedyPC Pro scan was run." *Id.* at 31.

The court disagrees that it must conclude that such an individualized inquiry is mandated based on the FAC's allegations. Whatever arguments SpeedyPC has will be addressed at the class certification stage. At this stage, it is sufficient that the FAC alleges common misrepresentations based on advertisements and that SpeedyPC Pro could not perform as advertised. In sum, SpeedyPC has not shown that a class action cannot be maintained based on the allegations in the FAC. The court denies SpeedyPC's motion to strike.

**CONCLUSION**

The court **DENIES** SpeedyPC's motion to dismiss and **DENIES** the motion to strike the class allegations.

This disposes of ECF No. 30.

**IT IS SO ORDERED.**

Dated: March 7, 2013

_____
LAUREL BEELER
United States Magistrate Judge